FEDERAL RESERVE BANK OF BOSTON, Plaintiff, Appellant,

v.

COMMISSIONER OF CORPORATIONS AND TAXATION OF the COMMONWEALTH OF MASSACHUSETTS, Defendant, Appellee.

No. 74–1028.

United States Court of Appeals, First Circuit.

Argued May 6, 1974.

Decided July 11, 1974.

Daniel B. Bickford and Richard J. McCarthy, Boston, Mass., with whom Ely, Bartlett, Brown & Proctor, Boston, Mass., was on brief, for plaintiff, appellant.

Terence P. O'Malley, Asst. Atty. Gen., Boston, Mass., with whom Robert H. Quinn, Atty. Gen., and Walter H. Mayo, III, Asst. Atty. Gen., Boston, Mass., were on brief, for defendant, appellee.

Before COFFIN, Chief Judge, McENTEE and CAMPBELL, Circuit Judges.

LEVIN H. CAMPBELL, Circuit Judge.

This appeal raises the question whether the Federal Reserve Bank of Boston may sue in federal court for a declaration concerning the legality of the Massachusetts sales tax on materials used to construct its new building. The Bank had asked the Massachusetts Commissioner of Corporations and Taxation for

a certificate of exemption pursuant to state law which exempts from tax:

"(d) Sales to the United States, the commonwealth . . ., or their respective agencies.

. . . . . .

"(f) Sales of building materials and supplies to be used in the construction, . . . of (1) any building structure, . . . owned by or held in trust for the benefit of any governmental body or agency mentioned in paragraph (d) and used exclusively for public purposes . . . ."

The Commissioner refused to issue a certificate, stating that "[s]ales of building materials and supplies to be used in the construction of the Federal Reserve Bank of Boston, an agency of the United States, do not qualify for exemption under [M.G.L.] Ch. 64H § 6(f)(1) since the building will not be used exclusively for public purposes." This conclusion stemmed from the fact that the Bank was erecting a larger building than it needed, intending, until its own requirements increased, to rent surplus space to governmental and perhaps private tenants.[1] After the Commissioner's adverse ruling, the Bank brought the present suit for declaratory judgment in the district court. It asserted that the Commissioner erred because the Bank was not empowered to hold property for other than public use; because rental revenues would go for a public purpose (reduction of the bonded indebtedness of the United States); and because the ruling conflicts both with 12 U.S.C. § 531,[2] exempting federal reserve banks from state and local taxation, and with the Supremacy Clause.

Sought is either a declaration that the Commissioner's ruling was erroneous under state law or, alternatively, if correct, that 12 U.S.C. § 531 exempts the materials and supplies purchased by the Bank from the Massachusetts sales tax.

The district court dismissed the petition, ruling that a federal reserve bank is similar to federal savings and loan associations which, under *Great Lakes*,[3] we held could not on their own obtain a federal court declaration against state taxes. United States v. State Tax Comm'n, 481 F.2d 963 (1st Cir. 1973). The district court discounted 12 U.S.C. § 632,[4] giving federal reserve banks access to the federal courts, on the ground that while it conferred "jurisdiction" it did not overcome the principals of comity, equity and federalism underlying *Great Lakes*. Relying upon our decision in United States v. State Tax Comm'n, *supra* 481 F.2d at 974, the court held that the state court remedy to contest the taxes was adequate. The district court

---

1. In so doing, the Bank was following guidelines issued by the Board of Governors of the Federal Reserve System: "When, for various reasons, relocation of the Bank to a new site is deemed advisable, the building program should be developed to meet predictable needs for a minimum · of thirty years. . . . It is recommended that a new building provide twenty percent more gross office space than the peak area estimated to be required during the thirty years after the completion of construction. . . . The provision of this amount of extra space for future expansion will have a profound effect upon the design of new Bank buildings, for it will be economically defensible only if this excess office space is leased until needed." Guidelines for Design and Construction of Federal Reserve Bank Buildings 15, 21 (1970).

2. "Federal Reserve banks, including the capital stock and surplus therein and the income derived therefrom, shall be exempt from Federal, State, and local taxation, except taxes upon real estate."

3. Great Lakes v. Huffman, 319 U.S. 293, 63 S.Ct. 1070, 87 L.Ed. 1407 (1943).

4. 12 U.S.C. § 632 provides in part:
"Notwithstanding any other provision of law, all suits of a civil nature at common law or in equity to which any Federal reserve bank shall be a party shall be deemed to arise under the laws of the United States, and the district courts of the United States shall have original jurisdiction of all such suits; and any Federal reserve bank which is a defendant in any such suit may, at any time before the trial thereof, remove such suit from a State court into the district court of the United States for the proper district by following the procedure for the removal of causes otherwise provided by law. . . ."

also determined that as federal reserve banks were not "instrumentalities" of the United States, they were without recourse to a federal forum.

The latter point stems from an apparent misunderstanding of United States v. State Tax Comm'n. We did not hold that savings and loan associations were not federal instrumentalities. To the contrary, we said that they were. But we held that *Great Lakes* barred even such instrumentalities from suing when not joined as co-plaintiffs with the United States.[5] The entities we were considering had "many of the characteristics of private corporations." *Id.* 481 F.2d at 975. We pointed out that the 4500 federal savings and loan associations were at the bottom of a three-tiered arrangement headed by the Home Loan Bank Board. If any such bank wished to by-pass normal state tax collection and litigation channels, we said it should persuade the Attorney General of the United States, acting on behalf of the Home Loan Bank Board, to join in its claim. We had in mind that if a sufficient threat to federal sovereignty were to arise, the Attorney General would presumably lend the umbrella of the United States, thus permitting access to the federal courts; if not (and, given the nature of savings and loan associations, such claims might well be of predominantly private commercial import) there was no reason to by-pass and possibly subvert state tax collection procedures.

Thus the present case does not turn on whether federal reserve banks are instrumentalities. Plainly they are. The question is whether there is any reason to treat them differently from instrumentalities like savings and loan associations. As was true of the associations, the Bank comes before us represented by private counsel rather than the Attorney General of the United States, and is not joined as co-plaintiff with the United States. Is it privileged, like the United States itself, to maintain this proceeding?

■ We think the answer must be in the affirmative. While savings and loan associations may in many ways be analogized to private corporations, federal reserve banks, by contrast, are plainly and predominantly fiscal arms of the federal government. Their interests seem indistinguishable from those of the sovereign and there are good reasons to relieve them of any symbolic requirement of joinder with and by the United States.[6] There are twelve such banks in the nation, of which the plaintiff is one. They were created and are operated in furtherance of the national fiscal policy. They are not operated for the profit of shareholders, and do not provide ordinary commercial banking services; their stockholders, the member banks, lack the powers and rights customarily vested in shareholders of a private corporation. Federal reserve banks act as depositories for money held in the United States Treasury and as fiscal and monetary

---

5. *Great Lakes* extended to declaratory proceedings the prohibition in the Tax Injunction Act, 28 U.S.C. § 1341, against a federal court's enjoining of state tax collections if an adequate state remedy existed. But the Supreme Court has recognized "an unbroken line of authority, and convincing evidence of legislative purpose, that [the Tax Injunction Act] does not act as a restriction upon suits by the United States to protect itself and instrumentalities from unconstitutional state exactions." Department of Employment v. United States, 385 U.S. 355, 358, 87 S.Ct. 464, 466, 17 L.Ed.2d 414 (1966) (footnotes omitted). In United States v. State Tax Comm'n, *supra*, we recognized that the United States enjoys similar freedom from the limitations in *Great Lakes*.

6. The typical co-plaintiff joining with the United States in other cases has been not a public governmental body, as in the instant case, but a private party performing some functions for the federal government. *See*, *e. g.*, United States v. Bureau of Revenue, 291 F.2d 677 (10th Cir. 1961) (Phillip Petroleum Co.); United States v. Department of Revenue, 202 F.Supp. 757 (N.D.Ill.), aff'd, 371 U.S. 21, 83 S.Ct. 117, 9 L.Ed.2d 95 (1962) (Olin Mathieson Chemical Corp.); United States v. Livingston, 179 F.Supp. 9 (E.D.S.C.1959), aff'd, 364 U.S. 281, 80 S.Ct. 1611, 4 L.Ed.2d 1719 (1960) (E.I. duPont de Nemours & Co.).

agents of the United States. 12 U.S.C. § 391. They hold the legal reserves of members banks, issue currency, facilitate check clearance and collection, and have supervisory duties as to member banks. They also provide important services for the Treasury with respect to the public debt and the issuance, handling and redemption of government securities. The limited income generated is used to pay expenses and dividends limited to 6 percent. Any remaining earnings are paid into the surplus fund, 12 U.S.C. § 289, where they may be used by the United States Treasury to supplement the gold reserve. Should a federal reserve bank *go into* liquidation, any surplus becomes the property of the United States, 12 U.S.C. § 290. *See generally* Board of Governors, The Federal Reserve System: Purposes and Functions (5th ed. 1969).

In his dissenting opinion in First Agricultural Nat'l Bank v. State Tax Comm'n, 392 U.S. 339, 88 S.Ct. 2173, 20 L.Ed.2d 1138 (1968), Mr. Justice Marshall chronicles the transfer of governmental fiscal functions from the national banks to the federal reserve banks, pointing out that the national banks' role as federal functionaries has correspondingly diminished to the point where the latter scarcely differ from their state chartered competitors. *Id.* at 356–358, 88 S.Ct. 2173. Like the national banks, federal savings and loan associations *today* play a relatively slight role as agencies of government, whereas the federal reserve banks, analogous to the central banks of other nations such as the Bank of England, play a major role. Thus we think a state tax affecting one of the twelve federal reserve banks calls directly into question the sovereign interest of the United States. Such a bank lacks the Janus-faced characteristics of savings and loan associations.

Moreover, Congress has made it plain by express statute that a federal reserve bank is to have unrestricted access to the district courts. In Federal Reserve Bank v. Kalin, 77 F.2d 50, 51 (4th Cir. 1935), the court said that 12 U.S.C. § 632 is written "in the broadest possible language" and that,

> "It was doubtless the intention of Congress to grant full right of recourse to the federal courts to these institutions, which had become important agencies of the federal government in its control of banking and currency."

Another court has concluded that 12 U.S.C. § 632 reflects a congressional policy to have any litigation affecting the Federal Reserve System centered in a federal forum to promote uniformity of decision. Bickford's, Inc. v. Federal Reserve Bank, 6 F.Supp. 928, 930 (S.D.N.Y. 1934). Such a clearly expressed strong federal interest in litigating all reserve bank business in the federal courts further tips the scale away from the general hostility to interfering with a state taxing scheme.[7]

The positioning of the federal reserve banks in the federal governmental structure also militates against forcing them to acquire the separate support of the Attorney General before asserting the same right available to the United States to contest, in federal court, an allegedly unconstitutional state exaction. The federal reserve banks share the making of policy with the seven member Board of Governors of the Federal Reserve System. Members are appointed by the President for staggered terms, and the Board, like the banks, may employ counsel. It would seem that Congress intended all components of the Federal Reserve System, including the banks, to act in many respects outside the executive chain of command, although their greater independ-

7. In Agua Caliente Band of Mission Indians v. County of Riverside, 442 F.2d 1184 (9th Cir. 1971), cert. denied, 405 U.S. 933, 92 S.Ct. 930, 30 L.Ed.2d 809 (1972), an instrumentality of the United States was allowed to sue without the aid of the United States. In that case there was also a special jurisdictional statute, 28 U.S.C. § 1362, although one less comprehensive than 12 U.S.C. § 632.

64

ence in no way signals a diminished role in the operations of government. We thus see little purpose in insisting upon a symbolic joinder by the United States itself. We conclude that appellant may proceed in a federal forum under the same exception to *Great Lakes* available to the United States were it a named plaintiff.[8] In so deciding, we must accept the absence of any bright line to facilitate analysis; each instrumentality must be examined in light of its governmental role and the wishes of Congress as expressed in relevant legislation.

 We add that the question to be litigated is largely, if not entirely, a "federal" rather than state question. The fundamental issue is whether the state has reached beyond its powers under the Supremacy Clause and under the federal statute exempting federal reserve banks from tax. 12 U.S.C. § 531. While an interpretation of the Commonwealth's statute exempting certain governmental bodies and operations is also required, the meaning of "public purposes" is almost inextricably interwoven with federal issues, including constitutional principles and the federal charter and regulations of the Bank. *Cf.* Reconstruction Finance Corp. v. Beaver County, 328 U.S. 204, 66 S.Ct. 992, 90 L.Ed. 1172 (1946); Springfield v. United States, 99 F.2d 860 (1st Cir. 1938), cert. denied, 306 U.S. 650, 59 S.Ct. 592, 83 L. Ed. 1049 (1939). Were this not so— were the case to raise a pure question of state law—we might think it wise to require abstention by the district court pending litigation of the state issue in the state court. Abstention in such circumstances is appropriate even when the United States is a party. *See* United States v. Nevada Tax Comm'n, 439 F.2d 435 (9th Cir. 1971); United States v. New York, 175 F.2d 75 (2d Cir.), cert.

denied, 338 U.S. 885, 70 S.Ct. 189, 94 L. Ed. 543 (1949). It allows the state courts to employ their special expertise in construing state law without surrendering the protection of the federal court with respect to federal rights.

But we conclude here both that the *Great Lakes* doctrine does not prevent the Bank from securing a declaration in the district court and that it would be inappropriate, in these particular circumstances, for the district court, while retaining jurisdiction, to abstain.

Reversed and remanded for further proceedings consistent herewith.

---

8. In *Great Lakes* the Court stressed that federal courts should decline to exercise jurisdiction only when private, not public, rights were at stake. "[A] federal court of equity, which may in an appropriate case refuse to give its special protection to pri-

vate rights when the exercise of its jurisdiction would be prejudicial to the public interest [citations omitted], should stay its hand in the public interest when it reasonably appears that private interests will not suffer." 319 U.S. at 297–298, 63 S.Ct. at 1073.