**FEDERAL RESERVE BANK OF. BOSTON, Plaintiff-Appellee,**

v.

**COMMISSIONER OF CORPORATIONS AND TAXATION OF the COMMONWEALTH OF MASSACHUSETTS, Defendant-Appellant.**

### No. 74–1385.

United States Court of Appeals, First Circuit.

Argued March 4, 1975.

Decided June 30, 1975.

Terence P. O'Malley, Asst. Atty. Gen., with whom Robert H. Quinn, Atty. Gen., and Walter H. Mayo, III, Asst. Atty. Gen., were on brief, for defendant-appellant.

Daniel B. Bickford, Boston, Mass., with whom Richard J. McCarthy and Gaston Snow & Ely Bartlett, Boston, Mass., were on brief, for plaintiff-appellee.

Before COFFIN, Chief Judge, McENTEE and CAMPBELL, Circuit Judges.

LEVIN W. CAMPBELL, Circuit Judge.

In *Federal Reserve Bank v. Comm'r of Corporations and Taxation*, 499 F.2d 60 (1st Cir. 1974), *rev'g* 368 F.Supp. 94 (D.Mass.1973), we held that appellee Bank was entitled to have the extent of its immunity from Massachusetts sales and use taxes, Mass.Gen.Laws chs. 64H–64I, determined by a federal court. The taxes were sought to be imposed with respect to building materials and sup-

plies being purchased for use in the construction of the Bank's new building. The Massachusetts Commissioner had refused to issue a requested certificate of exemption on the ground that since some fraction of the space in the Bank's new building could be rented to private tenants, the building was not going to be used "exclusively for public purposes" within the meaning of the exempting provisions of Mass.Gen.Laws ch. 64H, § 6(f). The Commissioner adhered to this position after the Bank amended its original contract with the general contractor to provide that the Bank itself, and not the contractor or subcontractors, would be purchaser of all supplies and materials to be used in the new Federal Reserve Bank building. When the Bank filed its complaint for declaratory relief, the District Court for the District of Massachusetts initially declined jurisdiction and dismissed, relying upon *Great Lakes Co. v. Huffman*, 319 U.S. 293, 63 S.Ct. 1070, 87 L.Ed. 1407 (1943), and our decision in *United States v. Tax Comm'n*, 481 F.2d 963 (1st Cir. 1973). We reversed, holding that a federal reserve bank belonged to the very narrow class of entities forming an integral part of the United States Government which were entitled to a federal forum even with respect to a state tax claim. We also stated, on the further issue of whether or not it might be prudent for the court to abstain voluntarily, that "[t]he fundamental issue is whether the state has reached beyond its powers under the Supremacy Clause and under the federal statute exempting federal reserve banks from tax." We felt this question was one appropriately litigated in a federal forum although we recognized that there might well be other cases turning on the construction of local law where it would be prudent for a federal court to abstain even though the United States or one of its associated sovereign entities was a party. 499 F.2d at 64.

Upon remand, the district court held further proceedings and on the Bank's motion for summary judgment issued an order and declaration that the materials were exempt from tax. The court based its decision on state law, ruling that Mass.Gen.Laws ch. 64H, § 6(d) & (f), each provide statutory exemption for the construction materials. 382 F.Supp. 207 (D.Mass.1974). The court thus found it unnecessary to decide whether 12 U.S.C. § 531, which provides that "Federal reserve banks . . . shall be exempt from Federal, State, and local taxation, except taxes upon real estate," also shields these materials from the reach of the Massachusetts tax statutes. We affirm, in essence, the judgment of the district court. However, we prefer to rest our decision more directly upon the immunity afforded by the federal statute.

## I

This is an area involving distinctions which are often without obvious differences. Certain points, however, seem reasonably clear. First, the mere fact that a state tax imposes a financial burden upon a private entity that is eventually passed along to the United States in the form of higher costs would not invalidate the tax. *City of Detroit v. Murray Corp.*, 355 U.S. 489, 494, 78 S.Ct. 458, 2 L.Ed.2d 441 (1958). Thus, the fact that contractors would charge more for a federal building if forced to pay local sales taxes would not be enough to exempt their purchases from taxation by the state. On the other hand, "decisions consistently prohibit taxes levied on the property or purchases of the Government itself." *Kern-Limerick, Inc. v. Scurlock,* 347 U.S. 110, 123, 74 S.Ct. 403, 411, 98 L.Ed. 546 (1954) (footnote omitted).

Here a federal instrumentality asserts its statutory exemption from state taxation. If those taxes are determined to be directed against the Bank, they cannot be imposed consistent with 12 U.S.C. § 531. We must determine whether the taxes fall upon the Bank or upon its general and subcontractors.

In this we are significantly aided by *First Agricultural Nat'l Bank v. State*

*Tax Comm'n,* 392 U.S. 339, 88 S.Ct. 2173, 20 L.Ed.2d 1138 (1968), *rev'g* 353 Mass. 172, 229 N.E.2d 245 (1967). There the Court considered the same Massachusetts sales tax provision as is in issue here and ruled that the incidence of this tax falls upon the purchaser of the items by which the tax is measured. 392 U.S. at 348, 88 S.Ct. 2173, 20 L.Ed.2d 1138. The Court held that sales to national banks, governmental entities similar to but of less importance than Federal Reserve Banks, *see* 499 F.2d at 62–63, were exempt from the tax. We thus address only the narrow issue of whether the Bank is to be viewed as the actual purchaser of the materials here.

## II

■ While the question is close, we conclude that the Bank is entitled to be treated, as its amended contract specifically provides, as the purchaser of the materials for purposes of the exemption from state taxes. We reach this conclusion largely on the strength of *Kern-Limerick, supra,* where the Court invalidated a sales tax on materials and supplies used by a government contractor pursuant to a cost-plus-fixed-fee contract. The contract provided that title to all such materials was to pass directly from the vendor to the Government and that the contractor, who was required to furnish all materials, was acting as the purchasing agent for the Government in making arrangements for delivery of these items. The Court noted that the contract differed in form, but not in economic effect upon the United States, from that considered in *Alabama v. King & Boozer,* 314 U.S. 1, 62 S.Ct. 43, 86 L.Ed. 3 (1941), where the state tax was upheld. But this difference in form was controlling. As the Court found that under the contract the purchaser was the United States, the tax fell impermissibly upon the Government.

By altering Article 16 of its contract, the Bank, like the Navy Department in *Kern-Limerick,* has sought to extend its tax immunity to shelter materials in the hands of contractors with which it deals.

As amended, the contract provides that all purchases of supplies, equipment, and other tangible personal property are to be made by the Bank's contractor and subcontractors as agents and subagents of the Bank. All orders for such materials and supplies are authorized and signed by an officer of the Bank. These orders provide that title will pass to the Bank upon delivery of the material ordered. After such delivery, the risk of loss, damage or destruction in excess of $5,000 in each case lies with the Bank. All invoices and bills of sale for such property run directly to the Bank, and the Bank makes payment directly to each respective vendor for the property delivered pursuant to the Bank's purchase order.

As appellant does not hesitate to point out, there appear to be some differences between the contract at issue here and that considered in *Kern-Limerick.* It is not clear that the requirement for the authorization and signature of a Bank officer is equivalent to the Navy's contract requirement that prior approval of an officer be obtained for purchases in excess of a specified amount. And the $5,000 deductible provision may be thought to alter somehow the arrangement. Finally, the contract here is for a fixed sum, from which all advances made by the Bank under Article 16 are deducted. This may produce some differences from the cost-plus arrangement in *Kern-Limerick.*

But as we read the Court's opinion in *Kern-Limerick,* the decision that the Government was the purchaser and that the transactions were therefore tax exempt did not turn upon such matters. Rather, the Court said that the "significant difference" lay in provisions which stated that the purchases were made "by the Government," and that while the contractor was to handle arrangements for the Government, "Title to all materials and supplies purchased hereunder shall vest in the Government directly from the Vendor. The Contractor shall not acquire title to any thereof." 347 U.S. at 119–20, 74 S.Ct. 403, 409, 93

L.Ed. 546. These provisions are essentially identical to those in Article 16 of the Bank's amended contract. Unless the reasoning of *Kern-Limerick* is no longer valid, we think this establishes the Bank's contention that the purchases of materials and supplies for use in its new building are tax exempt. At least we think that any attempted distinction would be so finespun as to make it impossible for the federal government and for states and localities to predict in advance the taxability of a given transaction.

Appellant argues that *Kern-Limerick* has been abandoned by the Supreme Court. Relying principally upon a 1958 trilogy known as the "Michigan cases"— *United States v. City of Detroit,* 355 U.S. 466, 78 S.Ct. 474, 2 L.Ed.2d 424 (1958); *United States v. Township of Muskegon,* 355 U.S. 484, 78 S.Ct. 483, 2 L.Ed.2d 436 (1958); *City of Detroit v. Murray Corp. of America,* 355 U.S. 489, 78 S.Ct. 458, 2 L.Ed.2d 441 (1958)—he argues that the approach of *Kern-Limerick* has been either overruled or severely eroded.

It is true that the majority in the Michigan cases eschewed formalistic[*] analysis of the perplexing problems of the ability of private contractors doing business with the federal government to assert its immunity from state use taxes, and that, as Mr. Justice Frankfurter observed in a separate opinion, the three opinions are noteworthy for the "loud silence" they afford *Kern-Limerick. See* 355 U.S. at 499, 78 S.Ct. 458, 2 L.Ed.2d 441 (Frankfurter, J.). But Justice Frankfurter was of the opinion that the decision retained its vitality despite any language apparently to the contrary in the Michigan trilogy. Moreover, since the instant appeal was argued, the Supreme Court issued opinions in two cases

presenting issues similar in scope to those we consider here, *Gurley v. Rhoden,* 421 U.S. 200, 95 S.Ct. 1605, 44 L.Ed.2d 110 (1975); *United States v. Tax Comm'n,* 421 U.S. 599, 95 S.Ct. 1872, 44 L.Ed.2d 404 (1975). In each *Kern-Limerick* is cited with approval.

Against this history, we cannot conclude that *Kern-Limerick* is no longer good law. The Michigan cases are factually distinguishable, and we would be hard put to reach a different result than we here reach without encroaching upon *Kern-Limerick* and possibly *First Agricultural Nat'l Bank, supra,* as well.

We conclude, therefore, that under 12 U.S.C. § 531 the materials and supplies for the Bank's building are not subject to the Massachusetts sales tax.

■ This decision presents no conflict with Massachusetts law under the supremacy clause for the state expressly exempts from the operations of its sales tax all "[s]ales which the commonwealth is prohibited from taxing under the constitution or laws of the United States." Mass.Gen.Laws ch. 64H, § 6(a). A consequence of our decision is thus a determination of non-taxability under state as well as federal law.

■ There remains the use tax imposed under Mass.Gen.Laws ch. 64I. It does not appear under state law that this tax is intended to apply. Mass.Gen.Laws ch. 64I, § 7(b), excludes from the use tax all "[s]ales exempt from the taxes imposed under chapter sixty-four H." As the sales at issue here would at least be exempt under section 6(a) of that chapter, the use tax does not apply. *Boston Tow Boat Co. v. State Tax Comm'n,* Mass., 319 N.E.2d 908 (1974). Appellant argues that the exemption contained in section 7(b) should not be read to automatically exempt the Bank and its con-

---

[*] What is "form" and what "substance" can be argued either way in the present transaction. Since the materials are destined to be incorporated in the government building, their brief ownership by a private contractor is arguably merely "formal"; the real party in interest may be the Government. Conversely, of course, the Government's assertion of title earlier than might be usual may be called "formalistic." However, to insure predictability in a situation like this, much can be said for giving controlling weight to the terms of the contract.

tractors from imposition of a use tax. But even assuming he is correct on this point, we think the Massachusetts use tax statute cannot be applied to the construction materials purchased by the Bank for use in its new building.

The Bank concedes that under the Michigan cases and *United States v. Boyd,* 378 U.S. 39, 84 S.Ct. 1518, 12 L.Ed.2d 713 (1964), the Commonwealth is not without the power to enact legislation which would impose a use tax on the materials at issue here in the hands of the Bank's contractors. However, it has not done so. The use tax sought to be imposed is declared to tax "the exercise of any right or power over tangible property *incident to the ownership of that property* . . .." Mass.Gen. Laws ch. 64I, § 1(5) (emphasis supplied). As the Bank is the purchaser and owner of the materials at issue here, the use tax under this chapter would fall upon it rather than upon the contractors. In *First Agricultural Nat'l Bank v. State Tax Comm'n,* 353 Mass. 172, 229 N.E.2d 245 (1967), *rev'd,* 392 U.S. 339, 88 S.Ct. 2173, 20 L.Ed.2d 1138 (1968), the Supreme Judicial Court said, "there is no doubt that the incidence of the use tax is upon the purchaser." 353 Mass. at 181, 229 N.E.2d at 251. The tax is not drafted like those in *Boyd* and the Michigan cases so as to avoid this impermissible incidence. We agree with the Bank that even if it is not exempt from the use tax under section 7(b), Massachusetts has not drawn its taxing statutes so as to reach the materials and supplies being used in the construction of the new bank building. *United States v. Nevada Tax Comm'n,* 291 F.Supp. 530, 533–37 (D.Nev.1968), *aff'd,* 439 F.2d 435 (9th Cir. 1971).

We do not say that it would be beyond the power of the state to tax some aspect of the construction of the new bank building, or that the immunity that we recognize here is constitutionally compelled. We hold only that the Bank has effectively obtained maximum advantage from the tax exemption extended to it by Congress by tailoring its activi-

ties so as to immunize them from Mass. Gen.Laws chs. 64H & 64I.

Because the district court's declaratory judgment is fashioned in terms of state laws which we have not addressed here, we think it should be vacated and a new order issued setting forth the Bank's immunity in conformity herewith as a matter of federal law. While we do not necessarily doubt the correctness of the district court's interpretation of Mass. Gen.Laws ch. 64H, § 6(d) & (f), there is no occasion for us to express our opinion thereon, and we do not do so.

*Judgment vacated and remanded for entry of a new judgment in accordance with this opinion.*