**BRINK'S, INCORPORATED, Plaintiff,**

**and**

**International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America, et al., Plaintiff-Intervenors,**

**v.**

**BOARD OF GOVERNORS OF the FEDERAL RESERVE SYSTEM et al., Defendants,**

**Wells Fargo Armored Car Service Corporation, Defendant-Intervenor.**

**Civ. A. No. 78–2296.**

United States District Court, District of Columbia.

Jan. 11, 1979.

Edward K. Wheeler, Robert G. Seaks, Washington, D. C., for plaintiff.

Roland J. Wilder, Jr., Washington, D. C., for plaintiff-intervenor The International Brotherhood, etc.

Kenneth M. Raisler, Asst. U. S. Atty., for plaintiff-intervenor, USA.

Dennis A. Dutterer, Asst. U. S. Atty., Washington, D. C., for Board of Governors of the Federal Reserve System and for W. Michael Blumenthal, Secretary of the Treasury of the United States.

Richard L. Cys and Richard J. Morvillo, Washington, D. C. for The Federal Reserve Bank of Richmond.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

BARRINGTON D. PARKER, District Judge.

This is an action regarding the application of the Service Contract Act (Act), 41 U.S.C. § 351 *et seq.*, to certain contracts of the Federal Reserve Bank of Richmond (Richmond Bank or Bank). That Act requires the inclusion of minimum wage and fringe benefit specifications in service contracts between the United States and third parties. Plaintiffs Brink's and the International Brotherhood of Teamsters (IBT or Teamsters) seek declaratory and injunctive relief against the Richmond Bank and the Federal Reserve Board requiring, among other things, that the Richmond Bank adhere to the Act and keep in effect a contract between Brink's and the Richmond Bank pending final disposition of the action rather than allow Wells Fargo to begin providing the service in question. The issue of whether the Act applies to contracts of the Richmond Bank, as Brink's, IBT, and plaintiff-intervenor the United States contend, is reserved for later ruling.[1]

Before the Court is the joint motion of Brink's and the Teamsters for preliminary injunction. Upon consideration of the legal memoranda and other submissions of the

---

1. The Court appreciates the importance of the matter and expects to rule on the issue without unnecessary delay.

parties, and the oral argument of counsel, the Court concludes that the application should be denied. Plaintiffs have not made a sufficient showing of irreparable injury and are also barred by the equitable doctrines of laches and unclean hands. In accordance with Federal Rule of Civil Procedure 52(a), the following findings of fact and conclusions of law are entered.

### Findings of Fact

1. Plaintiff, Brink's, Inc. (Brink's), is a Delaware corporation and operates an armored car carrier service to transport coin, currency, and other valuables.

2. Plaintiff-intervenor, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, is a labor union and through its local affiliates represents employees of Brink's through the collective bargaining process.

3. Plaintiff-intervenor, United States of America, through its agent the Secretary of Labor, is charged with administration and enforcement of the Service Contract Act, 41 U.S.C. § 351 *et seq.*

4. Defendant, Federal Reserve Bank of Richmond is one of 12 federal reserve banks established by the Federal Reserve Act of 1913, 12 U.S.C. § 221 *et seq.* The Richmond Bank's multistate district encompasses the District of Columbia.

5. Defendant, the Board of Governors of the Federal Reserve System (Board), is a federal body also organized under the Federal Reserve Act and is charged with administering the nation's monetary policy.

6. Defendant-intervenor, Wells Fargo Armored Service Corporation (Wells Fargo), is a Delaware corporation which transports coin, currency, and other valuables in armored vehicles.

7. The Service Contract Act promulgated in 1965 requires the inclusion in service contracts entered into by the United States in excess of $2500 of provisions specifying the prevailing area minimum wages and fringe benefits. The wage and fringe benefit specifications are determined by the Secretary of Labor, or where a collective bargaining agreement covers the service employees, in accord with the rates for such employees provided for in the agreement.

8. The Richmond Bank's contracts do not comply with the Act and the Bank contends that the Act does not properly apply to it. Brink's maintains that it does.

9. In November, 1976, the Richmond Bank issued an invitation for bids on a three-year contract beginning January 1, 1978, to provide armored car transportation between Virginia and West Virginia. Both Brink's and Wells Fargo submitted bids.

10. Wells Fargo was the lowest bidder, and its bid was accepted in April, 1977, subject to its receipt of the necessary operating authority from the Interstate Commerce Commission (ICC).

11. Previously, in March, 1977, Wells Fargo had applied for the necessary carrier authority from the ICC and in September, when a decision was not forthcoming, it filed an application for temporary authority pending final agency disposition. Brink's opposed both applications.

12. In the fall of 1977, the Bank contracted with Brink's, which had been providing the West Virginia service under an existing contract, to continue to do so until Wells Fargo obtained the ICC authority. This interim contract was effective for six months beginning January 1, 1978, after which either party could terminate it upon 90 days notice.

13. On September 7, 1978, the Bank notified Brink's that it was terminating the interim contract, effective December 8, 1978, because Wells Fargo had obtained temporary operating authority from the ICC. Brink's had other contracts with the Bank which were not affected.

14. Brink's meanwhile sought review and a stay pending review in the District of Columbia Court of Appeals of the ICC grant of temporary authority to Wells Fargo. A temporary stay pending review was entered on October 24, 1978. However, on December 6, the temporary stay was vacated.

15. Thereafter, on December 7, 1978, Brink's filed the present complaint seeking among other things that the Richmond Bank be required to adhere to the Service Contract Act and that Brink's West Virginia contract with the Bank remain in effect pending final disposition of the action. As authority, Brink's relied in part on a September 26, 1978, opinion issued by the Assistant Attorney General on behalf of the Attorney General concluding that "the Federal Reserve Banks are subject to the provisions of the Service Contract Act." The opinion, which was in the form of a letter to the Secretary of Labor, noted that the Labor Department and the Federal Reserve Banks had been trying unsuccessfully for some months to reach agreement on the issue. While Brink's had maintained since early 1977 that the Act applies to the Reserve Banks, the Richmond Bank's General Counsel was not aware of Brink's position until October 20, 1978, less than two months before Brink's brought this action.

16. The International Brotherhood of Teamsters was permitted to intervene as party plaintiff (hereafter Brink's and the Teamsters will be referred to as "plaintiffs"), and on December 8, 1978, the plaintiffs were granted a temporary restraining order which continued Brink's contract due to expire that day through December 19, 1978, which date has since been extended to January 11, 1979.

17. On January 3, 1979, plaintiffs' motion for a preliminary injunction was argued extensively by the parties. The United States, which was permitted to intervene, contended that neither the Brink's nor the Wells Fargo contract in question contained the representations and stipulations required by the Act and indeed this is conceded by the plaintiffs.

18. Both Brink's and Wells Fargo have filed affidavits claiming that they will sustain economic harm if not permitted to provide the service to West Virginia. Brink's claims that some 15 employees will lose their jobs and that the company will suffer economic harm if its contract is not continued. Wells Fargo has made the necessary preparations, including the hiring of employees and purchase of equipment, and claims that it is now ready to begin performance.

*Conclusions of Law*

1. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, 41 U.S.C. § 351 *et seq.,* and 5 U.S.C. § 701 *et seq.*

2. As set forth in *Virginia Petroleum Jobbers Ass'n v. FPC,* 104 U.S.App.D.C. 106, 259 F.2d 921 (1958), the Court must consider four factors in determining whether to grant a preliminary injunction: 1) has movant made a strong showing that it is likely to prevail on the merits; 2) has movant shown that irreparable injury will follow denial of injunctive relief; 3) would a stay substantially harm other parties; and 4) where lies the public interest? If the last three factors strongly favor injunctive relief, the Court may issue a stay if the movant has made a substantial case on the merits. *Washington Metropolitan Area Transit Comm'n v. Holiday Tours,* 182 U.S. App.D.C. 220, 559 F.2d 841 (1977).

3. Likelihood of success on the merits.

While the plaintiffs have made a fairly strong showing that the Service Contract Act should be made applicable to the Richmond Bank, (*see* September 26, 1978, Opinion on behalf of Attorney General), neither the Brink's nor the Wells Fargo contract complies with the Act.[2] Plaintiffs' very likelihood of a favorable ruling on the issue of the Act's applicability to the Bank militates against their being permitted to continue performing under their current nonconforming contract.

4. Irreparable injury and harm to other parties.

---

2. It is not clear whether a final written contract exists between Wells Fargo and the Bank; it is clear, however, that none of the Bank's con-

tracts contain the required wage and fringe benefit determination.

Plaintiffs fail to demonstrate that irreparable injury will follow the denial of a preliminary injunction. Plaintiffs argue that the jobs of some 15 employees will be jeopardized if not ended if Brink's contract does not remain in effect and that the company will suffer economic hardship. The same argument can be made, however, with respect to Wells Fargo. It has hired employees who are ready to begin work and whose livelihoods are also at issue and Wells Fargo itself will suffer economic injury if not permitted to perform. Furthermore, Brink's cannot now argue that it is unprepared for the termination of the West Virginia contract since it was a party to its terms, specifically agreeing to the 90 day termination provision, which the Bank exercised on September 7. Brink's has known since the outset that the contract was a temporary one subject to termination when Wells Fargo obtained the necessary ICC authority.

5. The public interest does not favor either plaintiffs or Wells Fargo. The public does have an interest in uninterrupted armored car service of coin and currency between Virginia and West Virginia which will occur whether Brink's or Wells Fargo provides the service.

6. Plaintiffs are also not entitled to a preliminary injunction under the doctrine of laches. Brink's has been of the position since early 1977 that the Service Contract Act applied to the Richmond Bank and has been aware of the Attorney General's similar conclusion for several months, yet Brink's did not seek relief from the Court until December 7, 1978, the day after the Court of Appeals vacated its stay of Wells Fargo's temporary ICC authority. Furthermore, Brink's failed to notify the Bank, for well over a year, of its position that the Act applied to the Bank's contract.

7. Plaintiffs are also estopped from obtaining equitable relief by the doctrine of unclean hands. They continue to profit from contracts with the Bank which were negotiated in the same manner as the challenged contract, not pursuant to the provisions of the Service Contract Act. *See Neal-Cooper Grain Co. v. Kissinger,* 385 F.Supp. 769, 778 (D.D.C.1974). Furthermore, none of the parties contemplated that the Act applied to the Bank when it awarded the challenged contract to Wells Fargo.

ORDERED accordingly.