**BRINK'S, INCORPORATED, Plaintiff,**

**and**

**International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America, et al., Plaintiffs-Intervenors,**

**v.**

**BOARD OF GOVERNORS OF the FEDERAL RESERVE SYSTEM et al., Defendants,**

**Wells Fargo Armored Car Service Corporation, Defendant-Intervenor.**

**Civ. A. No. 78–2296.**

United States District Court, District of Columbia.

Jan. 26, 1979.

Edward K. Wheeler, Robert G. Seaks, Washington, D. C., for Brink's, Inc.

Roland P. Wilder, Jr., Washington, D. C., for plaintiff-intervenor Intern. Broth. of Teamsters, Chauffeurs, Warehousemen and Helpers of America.

Kenneth M. Raisler, Asst. U. S. Atty., Washington, D. C., for plaintiff-intervenor U. S. and defendant Bd. of Governors of the Federal Reserve System.

Richard L. Cys, Washington, D. C., for defendant Federal Reserve Bank of Richmond.

Michael M. Maney, Washington, D. C., for defendant-intervenor Wells Fargo Armored Service Corp.

## MEMORANDUM OPINION

BARRINGTON D. PARKER, District Judge:

This action involves the application of the Service Contract Act (Act), 41 U.S.C. § 351 *et seq.*, to the Federal Reserve Bank of Richmond (Bank or Richmond Bank). The Act requires that certain minimum wage and fringe benefit specifications be included in service contracts entered into by the United States in excess of $2,500.[1] On January 11, the Court denied the application of the plaintiff Brink's and plaintiff-intervenor the International Brotherhood of Teamsters for a preliminary injunction requiring the defendant Richmond Bank to keep in effect a service contract with Brink's pending resolution of this action 466 F.Supp. 112 (D.C.). The Findings of Fact and Conclusions of Law entered in that connection are incorporated and referenced as a part of this opinion. An important question left unresolved in the preliminary injunction proceeding but now before the Court is whether the Service Contract Act applies to the Richmond Federal Reserve Bank as an agency of the United States. The Richmond Bank argues that it is essentially a private banking corporation and therefore not bound by the Act. Plaintiff-intervenor the United States contends that the Richmond Bank is a part of the United States for purposes of the Service Contract Act. The Court agrees with the United States and concludes that appropriate declaratory and injunctive relief should be entered.

---

1. The relevant sections of the Act require the inclusion of a provision specifying the minimum wage to be paid the various classes of service employees as determined by the Secretary of Labor or in accordance with an applicable collective bargaining agreement and a provision specifying fringe benefits similarly determined. The Act further specifies that in no case are the wages to be less than the minimum wage specified in the Fair Labor Standards Act, 29 U.S.C. § 206.

## I.

■ Before proceeding to the merits, the Court addresses the motion of the Richmond Bank to dismiss for lack of personal jurisdiction. Fed.R.Civ.P. 12(b)(2). The Bank argues that it is in effect a foreign banking corporation with only minimal contacts with the District of Columbia and that its allegedly illegal acts have no nexus with the District. As authority, the Bank relies on the District of Columbia Long-Arm Statute,[2] which confers jurisdiction upon this Court over persons outside the District of Columbia when they have transacted business within it.

The Court, however, is not confined by the jurisdictional limits of the Long-Arm Statute. In concluding as it does on the merits that the Richmond Bank is an agency of the United States for purposes of the Service Contract Act, the Court has jurisdiction over the Bank as a federal agency located within the District of Columbia. The Richmond Bank's federal reserve district encompasses the District, and the Bank provides regular currency, coin, and check collection services for its member commercial banks located here. In discharging those responsibilities, the Bank's agents and employees are constantly within the District. Nor does the Court's exercise of jurisdiction over the Bank offend traditional notions of fair play and substantial justice. *International Shoe v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). And, as the Supreme Court observed, a court in considering whether a corporation's contacts are sufficient for jurisdiction should consider an "estimate of the inconveniences" to it of a trial away from home. *Id.* at 317, 66 S.Ct. 154. Defending in this jurisdiction cannot unduly inconvenience the Bank located in Richmond, Virginia, a distance slightly in excess of 100 miles from Washington, D. C. The notion that the Bank is neither found nor does business here is untenable.

## II.

■ At the outset, the Court notes the long-standing relationship between the Federal Reserve Banks and the federal government and its economy. The Reserve Banks are corporate instrumentalities of the federal government established by the Federal Reserve Act of 1913, 12 U.S.C. § 221 *et seq.* They assist the Federal Reserve Board in regulating the nation's banking system and are operated in furtherance of the nation's fiscal policy.[3] Unlike private commercial banks, the Reserve Banks do not provide general checking, savings, or lending services to the public. They also differ from private banks in working for the public interest rather than private profit and in ownership. Federal Reserve Banks are directly owned by their member banks which purchase and hold, as a requirement of membership, a given amount of stock in the Banks. Annual dividends are set by law at a stated percent of the Federal Reserve Bank's paid in capital stock, with excess earnings going to the United States Treasury. The Reserve Banks hold the legal reserves of member banks, issue currency, facilitate check clearance and collection, and supervise member banks.

In concluding that the Service Contract Act applies to the Richmond Bank, the Court relies on 1) previous judicial precedents which have found the Federal Reserve Banks to be federal agencies or instrumentalities; 2) an opinion issued by the Attorney General on September 26, 1978, concluding that the Reserve Banks are covered by the Act; and 3) the general remedial nature and purposes of the Act.

---

2. Specifically the Bank relies on 13 D.C.Code § 423(a)(1) and (b) which provide:

   (a) A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's—
   (1) transacting any business in the District of Columbia;

   (b) When jurisdiction over a person is based solely upon this section, only a claim for relief arising from acts enumerated in this section may be asserted against him.

3. *See* Board of Governors, *The Federal Reserve System, Purposes and Functions* (6th ed. 1974).

There is ample judicial authority for treating the Banks as governmental entities with regard to their governmental functions. The Banks themselves have resorted to the courts to assert their governmental character when it has been in their interest to do so. In *Federal Reserve Bank of Boston v. Commissioner of C. & T.*, 499 F.2d 60 (1st Cir. 1974), *after remand*, 520 F.2d 221 (1st Cir. 1975), the Boston Reserve Bank sought and was granted relief from a state sales tax on materials used in construction of the Boston Federal Bank building under 12 U.S.C. § 531, which exempts the Reserve Banks from federal, state, and local taxes except for those on real estate. In seeking relief, the Boston Bank had emphasized the public purposes (reduction of the bonded indebtedness of the United States) served by the revenues generated from its renting excess space in the Bank building to private persons. In holding that the Bank should not pay the state tax, the First Circuit stated:

> the present case does not turn on whether federal reserve banks are instrumentalities. Plainly they are. The question is whether there is any reason to treat them differently from instrumentalities like savings and loan associations.

> .    .    .    .    .

> While savings and loan associations may in many ways be analogized to private corporations, federal reserve banks, by contrast, are plainly and predominantly fiscal arms of the federal government.

499 F.2d at 62.

As early as 1939, the Michigan Supreme Court held in a suit brought by the Minneapolis Federal Reserve Bank that that Bank was immune from a state mortgage tax under a Michigan law exempting from such tax United States governmental corporations or agencies. *Federal Reserve Bank of Minneapolis v. Register of Deeds*, 288 Mich. 120, 284 N.W. 667 (1939). In so holding, the Michigan court stated, "[t]he Federal Reserve Bank is an operating agency of the Federal government. Its creation was to supply a need of the national government." 284 N.W. at 668.

Numerous other cases have recognized the governmental character of the Federal Reserve Banks. *See A.M.R., Inc. v. Federal Reserve Bank of San Francisco*, No. 44387 (N.D.Calif., April 26, 1966) (unreported), finding that Federal Tort Claims Act, 28 U.S.C. § 2671, applied to the San Francisco Federal Reserve Bank as an instrumentality of the United States; *Federal Reserve Bank of Richmond v. Kalin*, 77 F.2d 50, 51 (4th Cir. 1935), holding Federal Reserve Bank could sue in district court under 12 U.S.C. § 632 since "it was doubtless the intention of Congress to grant full right of recourse to the federal courts to these institutions, which had become important agencies of the federal government in its control of banking and currency;" and *Raichle v. Federal Reserve Bank of New York*, 34 F.2d 910, 916 (2d Cir. 1929), finding Bank "a governmental agency under the direction of the Federal Reserve Board."

The Department of Justice is also of the position that "the Federal Reserve Banks are subject to the provisions of the Service Contract Act." On September 26, 1978, the Department's Office of Legal Counsel so held in an eleven page opinion letter to the Secretary of Labor. Its conclusion was based on a full consideration of the Act, its legislative history and purposes, "the close connection, if not the identity" of the Banks with the United States, and judicial precedent. In formulating the opinion, which was occasioned by the failure of the Department of Labor and Reserve Banks to resolve the matter through negotiation, the Justice Department had the benefit of memoranda from both of those parties. Thus it considered many of the same arguments the Richmond Bank raises here in opposing the application to it of the Service Contract Act. The opinion for example considers in detail the argument that the Act was only intended to cover contracts paid for from appropriated funds and thus could not apply to Reserve Bank contracts which are not so paid for. In rejecting the argument, the Justice Department notes that the Act itself contains no such limitation, that the legislative history relied on by

the Banks does not establish the proposition, and finally that regulations issued by the Labor Department pursuant to the Act draw no such distinction. The Court reaches the same conclusion.

Finally, the Service Contract Act was designed to provide "much needed labor standards protection for employees or contractors and subcontractors furnishing services to or performing maintenance service for Federal agencies." H.R.Rep. No. 948, 89th Cong., 1st Sess., p. 1. At the time of its enactment in 1965, the service contract was the only remaining category of federal contracts to which no labor standards protections applied. *Id.* While the Act does not define its use of the terms "United States" or "Federal Government," they must be liberally construed to effectuate the Act's humanitarian purposes of providing minimum wage and fringe benefit protection to individuals performing contracts with the federal government.

For the foregoing reasons, the Court concludes that the Service Contract Act applies to the service contracts of the Federal Reserve Bank of Richmond with armored car companies and that declaratory and injunctive relief should be granted to bring these contracts into compliance with the Act.[4]

---

4. In light of this disposition, the Court does not find it necessary to address the motion of the Federal Reserve Board to dismiss.