**12-5022-cv**
*Starr International Co., Inc. v. Federal Reserve Bank of New York*

In the

# United States Court of Appeals

### For the Second Circuit

————

AUGUST TERM, 2013

ARGUED: SEPTEMBER 17, 2013
DECIDED: JANUARY 29, 2014

No. 12-5022-cv

STARR INTERNATIONAL COMPANY, INC., INDIVIDUALLY AND
DERIVATIVELY ON BEHALF OF AMERICAN INTERNATIONAL GROUP, INC.,
*Plaintiff-Appellant.*

*v.*

FEDERAL RESERVE BANK OF NEW YORK,
*Defendant-Appellee,*

*and*

AMERICAN INTERNATIONAL GROUP, INC., A DELAWARE CORPORATION,
*Nominal Defendant-Appellee.*

————

Before: WALKER, LIVINGSTON, and CHIN, *Circuit Judges*.

————

Starr International Co. ("Starr") appeals from the judgment of the United States District Court for the Southern District of New York (Paul A. Engelmayer, *District Judge*), dismissing its claims

against the Federal Reserve Bank of New York ("FRBNY") for breach of fiduciary duty in its rescue of American International Group, Inc. ("AIG") during the fall 2008 financial crisis. *Starr Int'l Co. v. Fed. Reserve Bank of N.Y.*, 906 F. Supp. 2d 202 (S.D.N.Y. 2012). We agree with the district court that because of the uniquely federal interests at stake in stabilizing the national economy, state fiduciary duty law does not apply to FRBNY's rescue activities in this case and that it is preempted and replaced by federal common law. We thus AFFIRM the dismissal of Starr's complaint.

————

DAVID BOIES (Robert J. Dwyer, Boies, Schiller & Flexner LLP, New York, NY, and John L. Gardiner, Skadden, Arps, Slate, Meagher & Flom LLP, New York, NY, *on the brief*), Boies, Schiller & Flexner LLP, Armonk, NY, *for Plaintiff-Appellant*.

JOHN S. KIERNAN (Gary W. Kubek, Jennifer E. Spain, Nicholas C. Tompkins, David B. Noland, Thomas C. Baxter, Jr., Shari Leventhal, and Meghan McCurdy, Federal Reserve Bank of New York, *on the brief*), Debevoise & Plimpton LLP, New York, NY, *for Defendant-Appellee*.

JOSEPH S. ALLERHAND (Stephen A. Radin and Jamie L. Hoxie, *on the brief*), Weil, Gotshal & Manges LLP, New York, NY, *for Nominal Defendant-Appellee*.

————

JOHN M. WALKER, JR., *Circuit Judge*:

Starr International Co. ("Starr") appeals from the judgment of the United States District Court for the Southern District of New York (Paul A. Engelmayer, *District Judge*), dismissing its claims against the Federal Reserve Bank of New York ("FRBNY") for breach of fiduciary duty in its rescue of American International

Group, Inc. ("AIG") during the fall 2008 financial crisis. *Starr Int'l Co. v. Fed. Reserve Bank of N.Y.*, 906 F. Supp. 2d 202 (S.D.N.Y. 2012). We agree with the district court that because of the uniquely federal interests at stake in stabilizing the national economy, state fiduciary duty law does not apply to FRBNY's rescue activities in this case and that it is preempted and replaced by federal common law. We thus AFFIRM the dismissal of Starr's complaint.

## BACKGROUND

Because the district court dismissed Starr's claims on the pleadings, we must accept the complaint's factual allegations as true for the purposes of this appeal. *See DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 110-11 (2d Cir. 2010). According to the complaint, AIG faced increasing liquidity stress during the national financial crisis in the fall of 2008, primarily due to collateral calls by AIG's counterparties on contracts known as "credit default swaps" provided by AIG that function as insurance on debt securities instruments. AIG's liquidity problems worsened after Lehman Brothers Holdings Inc. filed for bankruptcy on September 15, 2008, and the three largest rating agencies downgraded AIG's credit rating on the same day.

On September 16, 2008, after AIG told the federal government that it might have to file for bankruptcy, FRBNY offered AIG a rescue arrangement that included a credit facility from FRBNY of $85 billion at an initial interest rate of 14.5%, but required AIG to give the federal government approximately 80% interest in AIG common stock to be held in a trust ("the Trust"). With no other alternatives besides bankruptcy available, AIG's directors and officers accepted the deal. On September 18, AIG's directors replaced the company's existing CEO with Edward Liddy, whom Starr alleges to have been under the control of FRBNY and thereby not acting solely in the interests of AIG's shareholders. On September 22, AIG and FRBNY executed the formal agreement ("the Credit Agreement") memorializing the above rescue arrangement.

At the time of the Credit Agreement, Starr was AIG's principal shareholder. Because Starr is time-barred from raising any

claim for breach of fiduciary duty for actions taken before November 21, 2008, Starr's claims focus on subsequent actions by FRBNY in connection with the rescue deal. First, in late November and December of 2008, FRBNY caused a special vehicle called Maiden Lane III—funded by both AIG and FRBNY—to be used to purchase $62 billion in assets from AIG credit default swap counterparties at full par value.[1] Starr alleges that Maiden Lane III effectively provided the counterparties with "backdoor bailouts" (to the detriment of AIG) because many of the counterparties would have been willing to settle AIG's obligations for less than par value.

Second, Starr also challenges FRBNY's actions involving the Trust. The Credit Agreement required AIG to issue Series C Preferred Stock convertible to nearly 80% of AIG common stock to the Trust, which was created on January 16, 2009, with the U.S. Treasury named as the sole beneficiary. On March 4, 2009, AIG issued the required Series C Preferred Stock to the Trust. Starr contends that the conversion of the Series C Preferred Stock to common stock was subject to approval of the other shareholders, and that after the shareholders rejected a proposal to increase the number of common stock shares on June 30, 2009, their vote was circumvented through a 20:1 reverse stock split (for which the Trust, as controlling shareholder, could vote).[2] In voting for the reverse stock split, the trustees were required to act in the best interests of the Trust beneficiary, the U.S. Treasury, which is a distinct entity from FRBNY. On January 14, 2011, over eighteen months later, the Treasury's shares were exchanged for AIG common stock.

---

[1] Maiden Lane III, like the original Credit Agreement, was approved by AIG Board members who were elected before the financial crisis.

[2] The number of authorized, but unissued, shares of common stock had to be increased to enable the conversion of the Trust's Series C preferred shares to common shares. This could be accomplished either by allowing the Trust's preferred shares to be converted to common shares (which had to be approved by existing common stock shareholders), or by a reverse stock split that decreased the number of issued common shares while leaving the total number of authorized shares the same (which could be approved by all shareholders, including the Trust).

Starr brought this suit on November 21, 2011, alleging direct and derivative claims against FRBNY for breach of fiduciary duty and for aiding and abetting AIG's officers in breaching their fiduciary duties, as well as constitutional claims that are not at issue in this appeal.[3] On November 16, 2012, in a well-reasoned and thorough opinion, Judge Engelmayer granted FRBNY's motion to dismiss under Rule 12(b)(6) on the independent bases that (1) Starr did not adequately plead that FRBNY was a fiduciary to AIG under Delaware law and (2) because FRBNY is a federal instrumentality charged with preserving the stability of the national economy, Delaware fiduciary duty law (including the state law cause of action for aiding and abetting breaches of state law fiduciary duty) is preempted and does not apply to the challenged actions. *Starr*, 906 F. Supp. 2d at 214-15, 252. Starr timely appealed.

## DISCUSSION

We review de novo a district court's dismissal of a complaint under Rule 12(b)(6), accepting the complaint's factual allegations as true and drawing all reasonable inferences in the plaintiff's favor. *DiFolco*, 622 F.3d at 110-11. The complaint must "state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Congress has specified that federal reserve banks such as FRBNY may be sued, 12 U.S.C. § 341, and that such suits "shall be

---

[3] Starr's takings claims were withdrawn and dismissed without prejudice, and its equal protection and due process claims were dismissed with prejudice. Starr does not appeal the dismissal of these constitutional claims against FRBNY. On the same day that this action was filed against FRBNY in the Southern District of New York, Starr also filed a separate lawsuit in the Court of Federal Claims raising constitutional claims against the United States for its role in the AIG bailout. The Court of Federal Claims has partially denied the government's motion to dismiss. *Starr Int'l Co. v. United States*, 106 Fed. Cl. 50, *reconsideration denied*, 107 Fed. Cl. 374 (2012).

deemed to arise under the laws of the United States," *id.* § 632. Starr argues that in this case Delaware fiduciary duty law provides the rule of decision, and that FRBNY is accordingly liable for its rescue activities under state law. But the Supreme Court has held that in areas of "uniquely federal interests," "state law is pre-empted and replaced, where necessary, by federal law of a content prescribed (absent explicit statutory directive) by the courts—so-called 'federal common law.'" *Boyle v. United Techs. Corp.*, 487 U.S. 500, 504 (1988) (internal quotation marks omitted). Because of the uniquely federal interests at stake in FRBNY's rescue of AIG, at the height of the 2008 financial crisis, which would be compromised by the application of state fiduciary duty law, we hold that federal common law preempts state fiduciary duty law and provides the rule of decision.

FRBNY, as one of the twelve regional federal reserve banks, is a "fiscal agent[] of the United States." 12 U.S.C. § 391; *see generally* Bd. of Governors of the Fed. Reserve Sys., *The Federal Reserve System: Purposes & Functions* 6-11 (9th ed. 2005). Federal reserve banks have shareholders: national banks must buy stock in the federal reserve bank of their district, and state banks may also apply for membership. 12 U.S.C. §§ 222, 321. But federal reserve banks "are not operated for the profit of shareholders"; rather, they "were created and are operated in furtherance of the national fiscal policy." *Fed. Reserve Bank of Bos. v. Comm'r of Corps. & Taxation of the Commonwealth of Mass.*, 499 F.2d 60, 62 (1st Cir. 1974); *see* 12 U.S.C. § 289 (requiring federal reserve banks to transfer net earnings to the U.S. Treasury). Because federal reserve banks "conduct important governmental functions regarding" matters including the "general fiscal duties of the United States," they are "instrumentalities of the federal government." *Fed. Reserve Bank of St. Louis v. Metrocentre Improvement Dist. # 1, City of Little Rock, Ark.*, 657 F.2d 183, 185-86 (8th Cir. 1981), *aff'd mem.*, 455 U.S. 995 (1982); *see also Fasano v. Fed. Reserve Bank of N.Y.*, 457 F.3d 274, 281-82 (3d Cir. 2006) (noting "strong arguments" in favor of finding federal reserve banks to be federal instrumentalities); *Fed. Reserve Bank of Bos.*, 499 F.2d at 62; *James v. Fed. Reserve Bank of N.Y.*, 471 F. Supp. 2d 226, 240 (E.D.N.Y. 2007).

FRBNY claims that the emergency rescue activities at issue here fell within its statutory authority. Section 13(3) of the Federal Reserve Act grants federal reserve banks the power to provide discretionary emergency loans to nonmembers such as AIG in "unusual and exigent circumstances" when such entities are "unable to secure adequate credit accommodations from other banking institutions." 12 U.S.C. § 343. Before extending emergency credit, a federal reserve bank must determine that "failure to obtain such credit would adversely affect the economy." 12 C.F.R. § 201.4(d). Under 12 U.S.C. § 341, FRBNY also has "incidental powers" needed to carry out its emergency lending activities.[4]

Starr agrees that state fiduciary duty law may not be applied to FRBNY when it exercises these statutory powers. But while Starr devotes much of its argument to the contention that FRBNY exceeded its statutory authority through its unprecedented rescue activities, we need not reach this issue to determine whether state fiduciary duty law applies. As the district court noted, "Starr has not identified any case that limits the scope of preemption to the scope of a federal instrumentality's lawful operation, or that makes state law inherently available to police excesses of authority by federal actors." *Starr*, 906 F. Supp. 2d at 242.

In the seminal *McCulloch v. Maryland*, the Supreme Court rejected a state's efforts to tax a federal instrumentality (like FRBNY here), noting that "[t]he states have no power, by taxation *or otherwise*, to retard, impede, burden, or in any manner control" such instrumentalities. 17 U.S. (4 Wheat.) 316, 436 (1819) (emphasis added). More recently, the Supreme Court has specified that

---

[4] 12 U.S.C. § 341 grants federal reserve banks "such incidental powers as shall be necessary to carry on the business of banking." We have interpreted identical language from the National Bank Act, 12 U.S.C. § 24, to refer to activities "convenient [and] useful in connection with the performance of" an express power. *Sec. Indus. Ass'n v. Clarke*, 885 F.2d 1034, 1044, 1049 (2d Cir. 1989) (alteration in original) (internal quotation marks omitted) (quoting *Arnold Tours, Inc. v. Camp*, 472 F.2d 427, 432 (1st Cir. 1972)).

displacement of state law by federal common law occurs in areas of "uniquely federal interests" when "a 'significant conflict' exists between an identifiable 'federal policy or interest and the [operation] of state law.'" *Boyle*, 487 U.S. at 504, 507 (alteration in original) (quoting *Wallis v. Pan Am. Petroleum Corp.*, 384 U.S. 63, 68 (1966)). "[T]he essence of this test is 'whether the relevant federal interest warrants displacement of state law.'" *New York v. Nat'l Serv. Indus., Inc.*, 460 F.3d 201, 207 (2d Cir. 2006) (quoting *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 692 (2006)).

For example, the Supreme Court has held that the liability of independent contractors designing helicopters for the federal government was an area of uniquely federal concern, and that imposing state tort law would conflict with this federal policy, even though (as here) the government was not a party to the dispute. *Boyle*, 487 U.S. at 507-08. In contrast, when there was no such conflict, the Supreme Court found it unnecessary to create "nationwide standards favoring claims of the United States" in the administration of Small Business Administration (SBA) and Farmers Home Administration (FHA) loans when "state commercial codes 'furnish convenient solutions in no way inconsistent with adequate protection of the federal interest[s].'" *United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 729 (1979) (alteration in original) (quoting *United States. v. Standard Oil Co.*, 332 U.S. 301, 309 (1947)).

In this case, Delaware fiduciary duty law cannot be applied to FRBNY's rescue activities consistently with adequate protection of the federal interests at stake in stabilizing the national economy. If FRBNY were a fiduciary of AIG under Delaware law,[5] it would have an "unyielding . . . duty to protect the interests of the corporation and to act in the best interests of its shareholders." *Cede & Co. v. Technicolor, Inc.*, 634 A.2d 345, 360 (Del. 1993), *modified on other*

---

[5] The district court concluded that Starr did not adequately plead that FRBNY was a fiduciary to AIG under the standards of Delaware law. *Starr*, 906 F. Supp. 2d at 215-230. Because we conclude that Delaware fiduciary duty law does not apply to the circumstances presented in this case, we need not reach this issue.

*grounds*, 636 A.2d 956 (Del. 1994). This private duty would present a significant and direct conflict with FRBNY's obligation to act in the public interest as a fiscal agent of the United States and to take action in "unusual and exigent circumstances" when its failure to act "would adversely affect the economy." 12 U.S.C. § 343; *accord* 12 C.F.R. § 201.4(d).

This suit challenges the extraordinary measures taken by FRBNY to rescue AIG from bankruptcy at the height of the direst financial crisis in modern times. In light of the direct conflict these measures created between the private duties imposed by Delaware fiduciary duty law and the public duties imposed by FRBNY's governing statutes and regulations, we hold that in this suit, state fiduciary duty law (including the state law cause of action for aiding and abetting breaches of state law fiduciary duty) is preempted by federal common law. The district court thus correctly concluded that Starr has not pled a plausible claim.

## CONCLUSION

For the reasons stated above, we AFFIRM the judgment of the district court granting FRBNY's motion to dismiss Starr's complaint.