**UNITED STATES of America**

v.

**Harry and Ida GINSBURG.**

**Crim. No. 13241.**

United States District Court,
D. Connecticut.

March 5, 1974.

Stewart Jones, U. S. Atty., Peter Mear, Asst. U. S. Atty., New Haven, Conn., for plaintiff.

Robert C. Mirto, West Haven, Conn., Harold C. Arcaro, James R. McGowan, Salter, McGowan, Arcaro & Swartz, Providence, R. I., for defendants.

## RULING ON MOTION TO SUPPRESS

ZAMPANO, District Judge.

The defendants' motion to suppress, filed pursuant to Rule 41(e), F.R.Crim. P., presents the question whether certain procedures employed by the Internal Revenue Service to obtain information from banks in order to detect tax frauds constitute an invasion of the constitutional rights of the banks' depositors.

### I.

The relevant facts may be briefly stated. On April 4, 1967, the Port Chester-Rye Savings Bank filed its monthly "TCR–1 Form" with the Federal Reserve Bank indicating that the defendants had recently deposited the sum of $10,010.00 into their joint savings account. The report was submitted pursuant to the mandate of 31 C.F.R. § 102.-1(b) which requires that financial institutions inform the Federal Reserve Bank, by means of monthly TCR–1 reports, of all "transactions involving $10,000 or more of United States currency in any denominations." The information was then routinely conveyed to the Secretary of the Treasury who, in turn, relayed the data to the Internal Revenue Service, Audit Division. As a consequence, the defendants' income tax returns for the years 1967 and 1968 were examined, followed by a reference of the matter to the Intelligence Division for a determination of a possible tax fraud. The investigation eventually culminated in a seven-count indictment being returned against the defendants on March 29, 1973, charging them with willful violations of their income tax obligations. 26 U.S.C. §§ 7201, 7206 (1), (2).

Essentially the defendants launch a two-pronged attack on the methods utilized by the government to uncover their alleged income tax transgressions. First, they claim that the reporting provisions of § 102.1 constitute an infringement of their rights under the Fourth and Fifth Amendment; second, they contend the Secretary of the Treasury exceeded the limits of his statutory authority when he forwarded the information contained in the TCR–1 Form to the Internal Revenue Service for the express purpose of exposing tax law violators.

### II.

The defendants bottom their Fourth Amendment arguments on the principles enunciated in Stark v. Connally, 347 F.Supp. 1242 (N.D.Cal.1972) (appeal pending). In *Stark*, a majority of a three-judge district court declared unconstitutional the recently-enacted provisions of the Bank Secrecy Act, 12 U.S.C. § 1829b, 31 U.S.C. §§ 1051–1122 (1973 Supp.), and its implementing Treasury Regulations, 31 C.F.R. §§ 103.31–103.37, on the ground it is an unreasonable search and seizure for "an executive agency of government to require financial institutions and parties to or participants in transactions with them, to routinely report to it, without previous judicial or administrative summons, subpoena or warrant, the detail of almost every conceivable financial transaction as a surveillance device for the discovery of possible wrongdoing on the part of bank customers." *Id.* at 1246.

The court further found that the broad invasion of a bank's internal records and the depositors' private papers, authorized by the Act and the regulations promulgated thereunder, was nothing more than a mere "fishing expedition" unrelated to a specific, genuine governmental or public concern. It reasoned that the virtually unlimited reporting requirements were impractical and counter-productive, a gross invasion

of the right of privacy, and a clear violation of the Fourth Amendment provision protecting "the right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures."

However, it seems evident that the record in the instant case is significantly different from that in *Stark,* and no sound reasons have been advanced to extend the rationale of that case to the present facts. The regulation in question, § 102.1(b), was duly issued in 1945 by the Secretary of the Treasury pursuant to the authority granted under Section 5 of the Trading with the Enemy Act, as amended, 50 U.S.C. App. § 5(b)(1). While enacted originally in 1917 to track foreign agents and foreign financial manipulations, the Act, as amended in 1941, extended the Secretary's permissible scope of inquiry into certain domestic currency transactions. Moreover, the reporting requirements of § 102.1(b) are a far cry from the demands of §§ 103.31–103.37 under attack in *Stark.*

■ The regulation under review here merely requires the banking institution to report each month the identity of any person or organization involved in a currency transaction of $10,000 or more in any denominations. The bank customer has no proprietary interest of any kind in the TCR–1 Form containing this information; the report is submitted by the bank, a third party with whom the customer has no established legal privilege, and concerns only matters relating to the bank's own transactions with the depositor. Cf. Donaldson v. United States, 400 U.S. 517, 530–531, 91 S.Ct. 534, 27 L.Ed.2d 580 (1971); United States v. Northwest Pennsylvania Bank and Trust Co., 355 F.Supp. 607, 612 (W.D.Pa.1973). Unlike the situation in *Stark,* there is no disclosure or potential disclosure of the customer's personal and private transactions (i. e., checks, drafts and other instruments), no requirement that the bank maintain records usually not kept in the ordinary course of business (i. e., microfilms of customers' checks and banking instruments), and no requirement that any person or organization, other than the bank, participate in the reporting process.

Nor can the defendants find persuasive support for their position in the ever expanding contours of the right of privacy. See, e. g., Doe v. Bolton, 410 U.S. 179, 211–215, 93 S.Ct. 739, 35 L. Ed.2d 201 (1973); Roe v. Wade, 410 U. S. 113, 153, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); Roe v. Ingraham, 480 F.2d 102, 107–108 (2 Cir. 1973). Little expectation of privacy can reasonably be entertained by a customer concerning a transaction with a federally insured bank involving a substantial amount of currency —as opposed to one concerning a customer's personal and business transaction with private parties—where that bank, as the accountant in Couch v. United States, 409 U.S. 322, 93 S.Ct. 611, 34 L.Ed.2d 548 (1973), may have the obligation of disclosure to a governmental agency. Cf. United States v. Davey, 426 F.2d 842, 844–845 (2 Cir. 1970). In *Stark,* supra, the court carefully noted that the bank customer's expectation of privacy may not extend to the details of his financial affairs which are "shown on either the bank's own records or on the face of the customer's checks." 347 F.Supp. at 1248. See also Couch v. United States, supra at 335–336.

### III.

■ The defendants next assert that the subdivisions of § 102.1 are so vague as to "virtually guarantee" unequal treatment contrary to the mandate of the Fifth Amendment. The Court agrees that the Due Process Clause proscribes inconsistent and unequal treatment generated by a governmental agency's violation of its own regulations. United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260, 74 S.Ct. 499, 98 L. Ed. 681 (1954); United States v. Leahey, 434 F.2d 7, 9 (1 Cir. 1970). See generally Note, Violations By Agencies Of Their Own Regulations, 87 Harv.L.

Rev. 629 (1974). However, it is difficult to perceive any validity to a claim that § 102.1(b) fails to pass Fifth Amendment muster. Subsection (b) is specific and concise; its intendment is clear.

■ An attack on subsection (c) is misdirected in these proceedings. A review of the provisions of § 102.1 other than subsection (b), which is the subject matter of the present motion to suppress, would, contrary to established law, permit the defendants to challenge the constitutionality of an enactment when applied to hypothetical facts. United States v. Tortorello, 480 F.2d 764, 772 (2 Cir. 1973); United States v. Fiore, 434 F.2d 966, 971 (1 Cir. 1970), cert. denied, 402 U.S. 973, 91 S.Ct. 1659, 29 L.Ed.2d 137 (1971); United States v. DeStafano, 429 F.2d 344, 347 (2 Cir. 1970), cert. denied, 402 U.S. 972, 91 S. Ct. 1656, 29 L.Ed.2d 136 (1971); United States v. Dancis, 406 F.2d 729, 730 (2 Cir.), cert. denied, 394 U.S. 1019, 89 S. Ct. 1640, 23 L.Ed.2d 44 (1969).

### IV.

■ The defendants also contend there was a gross abuse of statutory power when the Federal Reserve Bank transmitted the TCR–1 Form to the Secretary of the Treasury who thereafter referred the information to the Internal Revenue Service for investigation.

At the outset it must be noted that the regulation itself, prescribing that the form be filed with the Federal Reserve Bank, was promulgated by the Secretary of the Treasury. Surely the delegation of the duty of initial review to another agency cannot serve to preempt the delegating authority from receiving the same information. Moreover, the eventual dissemination of the data to the Internal Revenue Service was merely an interdepartmental transfer within the Department of Treasury. The defendants cite no authority, nor has research disclosed any law, which prohibits the practice. What little law there is on the subject is to the contrary. In United States v. Cleveland Trust Co.,

474 F.2d 1234, 1236 (6 Cir. 1973), the court stated there was no reason "why the transmission of information between two different units of the federal government pertaining to a possibility of tax liability should be the subject of judicial condemnation."

■ But even assuming arguendo that the transmission of the TCR–1 data among the various agencies was unauthorized, no just cause exists to apply an exclusionary rule. Cf. United States v. Rosner, 485 F.2d 1213, 1227 (2 Cir. 1973); United States v. Rosenstein, 474 F.2d 705, 715 (2 Cir. 1973). There has been no evidence presented that the government resorted to coercion, fraud, trickery or deceit in obtaining the information. Cf. United States v. Walden, 490 F.2d 372 (4 Cir. 1974). While the freewheeling exchange of information among executive agencies in order to obtain proof for a criminal prosecution cannot be endorsed, the government's conduct here does not fall "well below the line of acceptability." United States v. Rosner, supra at 1227.

### V.

■ Finally, the Court agrees with the government's alternative argument that the defendants lack standing to object to the bank's disclosure of its own records to the Department of Treasury. See, e. g., Donaldson v. United States, supra at 537; United States v. Masterson, 383 F.2d 610, 613–614 (2 Cir. 1967); United States v. Bozza, 365 F.2d 206, 222–223 (2 Cir. 1966). To qualify as an "aggrieved person" within the meaning of Rule 41(e), F.R.Crim.P., a defendant must be the victim of the search and seizure, "one against whom the search was directed, as distinguished from one who claims prejudice only through the use of evidence gathered as a consequence of a search directed at someone else." United States v. Masterson, supra at 613. Since the divulgence of the potentially incriminating evidence was not coerced from the defendants in the case-at-bar, they have no standing to .

nullify the receipt of the disclosure from a party with whom they have no protected confidential relationship. Couch v. United States, supra at 329; Alderman v. United States, 394 U.S. 165, 171–172, 89 S.Ct. 961, 22 L.Ed. 2d 176 (1968).

Accordingly, the defendants' motion to suppress is denied.