**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**John C. HOLLINGSHEAD,**
**Defendant-Appellant.**

**No. 81–1136.**

United States Court of Appeals,
Ninth Circuit.

Submitted Dec. 7, 1981.

Decided March 24, 1982.

As Amended Aug. 16, 1982.

---

4. We do not by this ruling intimate any opinion about the claim for damages alleged in Count V of the complaint.

Stanley I. Greenberg, Los Angeles, Cal., for defendant-appellant.

Suzanne B. Conlon, Asst. U. S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Before FLETCHER and NORRIS, Circuit Judges, and von der HEYDT,* District Judge.

von der HEYDT, District Judge:

Appellant John C. Hollingshead was convicted following a jury trial of receiving bribes as a public official in violation of 18 U.S.C. § 201(c)(2) (1976), and receiving gratuities for official acts as a former public official. 18 U.S.C. § 201(g) (1976).[1]

Hollingshead was employed as building service manager for the Los Angeles Branch of the Federal Reserve Bank of San Francisco (FRB), from November 1977 to November 1978. His responsibilities included soliciting and obtaining bona fide competitive bids from qualified contractors for FRB capital projects in excess of $1,000. Following receipt of the required number of

---

* Honorable James A. von der HEYDT, Chief United States District Judge, District of Alaska, sitting by designation.

1. Hollingshead was also convicted of conspiracy to defraud the United States, 18 U.S.C. § 371 (1976) (count one), and engaging in a conflict of interest as a Federal Reserve Bank employee. 18 U.S.C. § 208(a) (1976) (counts thirteen through fifteen). Hollingshead's contention that there was insufficient evidence to support his conviction on these counts is without merit.

bids, Hollingshead reported the results on purchase requisitions reflecting the lowest bidder as the vendor. A FRB purchasing committee reviewed and approved all purchase requisitions between $1000 and $100,-000. Any FRB capital expenditure in excess of $100,000 was reviewed and approved directly by the Federal Reserve Board.

At trial the evidence showed that Hollingshead received bribes and kickbacks from independent contractors to influence him in making purchase requisitions. The jury found that certain independent contractors conspired with Hollingshead to submit fictitious competitive bids in the name of different independent contractors. The fictitious bids were accompanied by a lower (but inflated) bid from the particular co-conspirator. Thereafter, Hollingshead prepared and submitted purchase requisitions reflecting the non-existent competitive bids as well as the lower (inflated) bid of the particular co-conspirator. A kickback from the co-conspirator to Hollingshead would follow the contract award.

The gravamen of Hollingshead's appeal is that there is insufficient evidence to support a finding that he acted as a "public official" in discharging his responsibilities for the FRB. The Federal Bribery Statute under which Hollingshead was convicted applies only to a "public official." 18 U.S.C. § 201(a) (1976).

## I

Title 18 U.S.C. § 201(c)(2) provides that it is a felony for any "public official" to directly or indirectly demand and receive payments in return for committing a fraud on the United States. Title 18 U.S.C. § 201(g) provides that it is a felony for any "public official" to directly or indirectly receive anything of value for himself because of any official act performed by him. Section 201(a) defines "public official" to include any federal government employee or any person "acting for or on behalf of the United States, or any department, agency or branch of Government thereof...."[2] Hollingshead maintains that the FRB is a private institution; consequently, as an FRB employee he was not a "public official" within the meaning of 18 U.S.C. § 201(a).

## A

Hollingshead's argument principally relies on two Second Circuit cases. See United States v. Loschiavo, 531 F.2d 659 (2nd Cir. 1976); United States v. Del Toro, 513 F.2d 656 (2nd Cir. 1975). Both cases involved the bribery of the same assistant administrator of the Model Cities Program in New York.

In Del Toro, the Second Circuit emphasized the modifying phrase of the § 201(a) "public official" definition—the person must act "'under or by authority of any such department, agency or branch' of the federal government." Del Toro, 513 F.2d at 662 (quoting 18 U.S.C. § 201(a) in part). Since the bribed Model City official: 1) was a city employee; 2) was carrying out tasks delegated by another city employee; and 3) had his recommendations screened by three city agencies prior to HUD approval, the court found that he was entirely under state supervision and authority pursuant to the Model City Program. Accordingly, he was not a "public official" as defined in § 201(a).

In Loschiavo, 531 F.2d at 661, the court conceded that it was bound by Del Toro on the key issue regarding the nature of the Model City Official's employment. In reaffirming Del Toro, the Second Circuit made clear that under § 201(a) attention must center on the "character and attributes of [the] employment relationship, if any, with the federal government." Loshiavo, 531 F.2d at 661.

## B

In analyzing the character and attributes of Hollingshead's employment relationship with the federal government, it is apparent that as an employee of the FRB Hollingshead worked for a fiscal arm of the federal government. See Federal Reserve Bank of Boston v. Commissioner of C. & T., 499 F.2d 60, 62 (1st Cir. 1974) (federal reserve banks

---

**2.** A review of the legislative history of the Bribery, Graft and Conflicts of Interest Act of 1962, Pub. L. No. 87–849, 76 Stat. 1119 (1962), reprinted in [1962] U.S. Code Cong. & Ad. News 1316, shows that the § 201 definition of "public official" has remained essentially the same since 1962. The 1962 Act combined into a new § 201 "the substance of the ... [original] sections 201 through 213 relating to bribery and graft." S. Rep. No. 2213, 87th Cong., 2nd Sess. (1962), reprinted in [1962] U.S. Code Cong. & Ad. News 3852, 3856. "The term 'public official' ... [was] broadly defined to include officers and employees of the three branches of government, jurors, and other persons carrying on activities for or on behalf of the Government. Id. (emphasis added).

operate in furtherance of national fiscal policy). The twelve federal reserve banks are depositories for currency held in the United States Treasury, and serve as fiscal and monetary agents of the United States. 12 U.S.C. § 391 (1976). The banks also provide essential services for the Treasury regarding the public debt and government securities. *See Federal Reserve Bank*, 499 F.2d at 63.

Additionally, federal reserve banks are not operated for the profit of their member bank stockholders. Any dividends paid to the member bank stockholders are limited to six percent of the particular federal reserve bank's net profit. All remaining earnings are paid into a United States Treasury surplus fund. 12 U.S.C. § 289 (1976). Upon liquidation of a federal reserve bank any surplus becomes the property of the United States. *Id.* § 290.

Further evidence of the federal character of the federal reserve banks is seen in the fact that the Federal Reserve Board exercises general supervision over the banks. *Id.* § 248(j). Consequently, all federal reserve bank expenditures are subject to Federal Reserve Board approval and control. For example, all contracts for maintenance, renovation and remodeling of federal reserve bank facilities are subject to control and approval of the Federal Reserve Board of Governors.

This case is clearly distinguishable from *Loshiavo* and *Del Toro*. Here Hollingshead was carrying out tasks delegated by a government agency (the Federal Reserve Board) to one of its fiscal arms (the FRB). In *Loschiavo* and *Del Toro*, the tasks were delegated by a city employee to another city employee. *Del Toro*, 513 F.2d at 662. Hollingshead's recommendations were approved by other FRB employees on projects between $1000 and $100,000 pursuant to authority delegated by the Federal Reserve Board; Hollingshead obtained approval directly from the Federal Reserve Board when projects exceeded $100,000. In *Loschiavo* and *Del Toro*, the city employee's recommendations were passed on by a superior city employee as well as three city screening boards prior to HUD approval; and the city official never dealt directly with HUD. *See id.*

### C

We find the present case to be similar to *United States v. Mosley*, 659 F.2d 812 (7th Cir. 1981). In *Mosley*, the Seventh Circuit found a Comprehensive Employment and Training Programs Act (CETA) officer to be a "public official" within the meaning of § 201(a). The court relied on the fact that the statutory provisions of CETA clearly set forth substantial federal government involvement through supervision of the CETA program, which was created by the federal government for federal objectives. *Id.* at 815. Further, the court found the CETA officer to be in a position of responsibility which enabled him to exercise discretion to act for or on behalf of the federal government in administering the expenditure of federal funds. *Id.* at 815–16.

Here the statutory provisions for federal reserve banks manifestly set forth substantial federal government involvement through control by the Federal Reserve Board. Additionally, the federal reserve banks were clearly created for federal objectives. Moreover, Hollingshead was in a position of responsibility which enabled him to act for or on behalf of the federal government in recommending the expenditure of federal funds.

At Hollingshead's trial, the Government established that information and recommendations given by Hollingshead resulted in FRB and Federal Reserve Board approval for certain FRB capital expenditures. Under these circumstances, we hold that Hollingshead was acting for or on behalf of the federal government and was correctly found to be a "public official" pursuant to 18 U.S.C. § 201(a).

### II

Hollingshead maintains that the trial court erred in denying his motion to strike hearsay testimony regarding FRB payment of net profits to the United States Treasury (Galloway testimony). The Government

concedes that the Galloway testimony was hearsay but contends that any error in admitting the testimony was harmless. We agree.

Erroneous admission of hearsay does not automatically require reversal. Instead, the prejudicial impact of the error must be considered. *United States v. Castillo*, 615 F.2d 878, 883 (9th Cir. 1980). When the error is of constitutional dimension, we must find it harmless beyond a reasonable doubt or reverse; if of a lesser dimension, we must find it more probably than not harmless or reverse. *Id. See also United States v. Valle-Valdez*, 554 F.2d 911, 916 (9th Cir. 1977).

In the instant case, even if admission of the hearsay testimony violated defendant's rights under the confrontation clause of the sixth amendment, we still find the error harmless beyond a reasonable doubt. As the Government points out, net earnings of the FRB are returned to the United States Treasury as a matter of law. 12 U.S.C. § 290 (1976). The erroneously admitted hearsay indicated no more. Since the district court's instructions to the jury included explanation of section 290 of Title 12, Galloway's hearsay testimony to the same effect was merely cumulative. Because any error was harmless beyond a reasonable doubt, reversal is not required.

## III

Finally, Hollingshead argues that the trial court erred in refusing to suppress tape recorded statements made to a co-conspirator cooperating with the Government as an informant.[3] The statements were made seven months prior to indictment and

arrest, and there is no indication in the record that Hollingshead was represented by counsel at that time.

Hollingshead relies on *United States v. Henry*, 447 U.S. 264, 100 S.Ct. 2183, 65 L.Ed.2d 115 (1980). In *Henry*, the Court affirmed the suppression of incriminating post-indictment statements made to a government informant while defendant was in custody. The Court made clear that the issue was whether, under the facts, the government agent deliberately elicited incriminating statements within the holding of *Massiah v. United States*, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964) (incriminating statements deliberately elicited by government agent after defendant's retention of counsel and release on bail held in violation of sixth amendment right to counsel).

The Court found three factors important: 1) the informant was paid by the government and was acting under its instructions; 2) ostensibly, the informant was no more than a fellow inmate; and 3) "Henry was in custody and under indictment at the time he was engaged in conversation . . . ." *Henry*, 447 U.S. at 270, 100 S.Ct. at 2186. The Court reasoned that "[i]t is quite a different matter when the Government uses undercover agents to obtain incriminating statements from persons not in custody but suspected of criminal activity prior to the time charges are filed." *Id.* at 272, 100 S.Ct. at 2187.

In this case we are faced with "quite a different matter." Hollingshead was not in custody, nor had charges been filed. The government's action did not violate his sixth amendment right to counsel.

---

3. Hollingshead's argument that the trial court erred in admitting tape recorded conversations without proper authentication is without merit. The record indicates sufficient indicia to establish the authenticity and general trustworthiness of the recordings. *Cf. United States v. Mouton*, 617 F.2d 1379, 1383–84 (9th Cir. 1980) (required foundation for admission of tape recordings within court's discretion; admissibility not predicated upon rigid foundation requirements).

Hollingshead's contention that the trial court improperly allowed the Government to use a

summary evidence chart ignores established law, and is also without merit. It is apparent that the summary chart was based upon and fairly represented competent evidence before the jury. Admission of the summary evidence chart under these circumstances was not error. *See Gordon v. United States*, 438 F.2d 858, 876 (5th Cir. 1971), *cert. den.*, 404 U.S. 828, 92 S.Ct. 63, 30 L.Ed.2d 56 (1971), cited in *United States v. Johnson*, 594 F.2d 1253, 1256 n. 5 (9th Cir. 1979), *cert. den., sub. nom. Richey v. United States*, 444 U.S. 964, 100 S.Ct. 451, 62 L.Ed.2d 376 (1979).

Accordingly, the judgment of the district court is

AFFIRMED.