BAYOU STATE SECURITY SERVICES,
INC., Plaintiff-Appellant,

v.

DRAVO UTILITY CONSTRUCTORS,
INC., et al., Defendants-Appellees.

No. 81–3042.

United States Court of Appeals,
Fifth Circuit.

April 23, 1982.

John C. Derenbecker, Metairie, La., for plaintiff-appellant.

Bruce A. North, New Orleans, La., for Dravo.

Joan Elaine Chauvin, Asst. U. S. Atty., New Orleans, La., I. Avrum Fingeret, U. S. Dept. of Energy, Washington, D. C., for U. S. Dept. of Energy.

Before WISDOM, SAM D. JOHNSON and WILLIAMS, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge:

On January 18, 1979 the United States Department of Energy awarded a cost-reimbursement contract to Dravo Utility Constructors, Inc. (DUCI), under which DUCI was to provide the Department of Energy with assistance in operating and maintaining certain Strategic Petroleum Reserve Sites. One of the responsibilities specifically assumed by DUCI was the protection of each government facility. While it is undisputed that DUCI could have chosen to provide security services itself, it decided instead to subcontract for the services of professionals. On May 11, 1979, it issued a Request for Proposals soliciting bids for a negotiated fixed-rate contract with a site protection service. The Request, as eventually amended, clearly described for prospective bidders the criteria by which DUCI intended to evaluate their proposals.

The Request required that each bid contain a Contract Proposal, a Technical/Management Proposal, and a Cost Proposal. The Contract Proposal was to provide such information as the offeror's remittance address, financial statements, and Equal Employment Opportunity Policy. The Technical/Management Proposal was to focus on the offeror's qualifications in four areas, in descending order of importance: (1) training capability, (2) security management, (3) key personnel, project management and cost control, and personnel management; and (4) related corporate experience. DUCI indicated that it would assign a numerical score to each Technical/Management Proposal received. Finally, the Cost Proposal was to summarize expected labor and burden costs for each site, culminating in a total cost figure. The Request expressly noted that "[t]he Technical and Management Factors are generally each of higher importance than the Cost Factors."

After receiving and analyzing thirteen bids, DUCI narrowed the field to three: Bayou-Citadel, a joint venture consisting of appellant Bayou State Security Services, Inc., and Citadel Security, Inc.; Wackenhut Services, Inc.; and Mason-Reguard, another joint venture. In the initial evaluation, Mason-Reguard scored 87.5, Wackenhut 83.3, and Bayou-Citadel 82.5. Following a round of interviews, conferences, and submission of "best and final offers," Wackenhut led in the technical scoring with 88.5; Mason-Reguard followed closely with 87.5, and Bayou-Citadel lagged with 78.5. Wackenhut estimated its costs at $1,189,597.74, Mason-Reguard at $1,585,146.00, and Bayou-Citadel at $1,111,433.44.

DUCI selected Wackenhut. An intracompany memo written by DUCI's security director just prior to the decision suggests that Mason-Reguard's higher costs overbalanced its competitive technical score and that Bayou-Citadel's lower rating reflected concern at DUCI over the company's training and "overall" capabilities. Having made its choice, DUCI forwarded the Wackenhut proposal to the Department of Energy for approval, as required by their con-

tract. DOE consented to the choice on August 3, and DUCI awarded the contract to Wackenhut the same day.

Bayou-Citadel immediately filed a protest with the United States General Accounting Office (GAO) pursuant to 4 C.F.R. § 21.1 et seq. (1981). On February 6, 1980, GAO dismissed the protest because it failed to describe any of the circumstances under which GAO considers protests by subcontractors.[1] Bayou State Security Services, Inc., No. B–195675 (Comp. Gen. Feb. 6, 1980). Bayou-Citadel then brought this lawsuit against DUCI and the federal appellees, the U. S. Secretary of Energy and the U. S. Comptroller General, alleging federal jurisdiction under the Administrative Procedure Act, 5 U.S.C. § 702; the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202; 28 U.S.C. § 1331 (federal question); 28 U.S.C. § 1332 (diversity of citizenship with respect to DUCI); and 28 U.S.C. § 1361 (mandamus of U. S. government employee). The complaint asked for a declaratory judgment and a mandatory injunction ordering the defendants to award the contract to Bayou-Citadel. Alternatively, it prayed for $1,000,000.00 in actual damages based on proposal preparation costs, litigation costs, and lost profits, and in punitive damages.

The district court recognized jurisdiction over DUCI on diversity grounds and over the federal appellees because Bayou State might have alleged grounds for "some declaratory relief." As the court noted, it clearly lacked jurisdiction over the government defendants for any money damage claim based upon contract since the Tucker Act, 28 U.S.C. § 1346(a)(2), vests exclusive jurisdiction in the Court of Claims over civil actions that involve more than $10,000 and arise from an express or implied contract with the United States.[2] After hearing the evidence, the district court concluded that Bayou-Citadel had failed to carry its burden of proving any facts that would entitle it to relief from any defendant. DUCI's request for bids had stated clearly that costs was only one consideration, the court reasoned; therefore, "DUCI had a right to evaluate anticipated performance as well as costs in making its determination as to who the sub-contractor would be." Finding that DUCI had done so "in good faith, using

---

1. The GAO will consider subcontractor protests only in the following limited circumstances: (1) where the prime contractor is acting as a purchasing agent of the government; (2) where the government's active or direct participation in the selection of the subcontractor has the net effect of rejecting or selecting a potential subcontractor, or significantly limiting subcontract sources; (3) where fraud or bad faith is shown in the government's approval of the subcontract award of proposed awards; (4) where the subcontract is "for" an agency of the government; or (5) where the questions concerning the award of subcontracts are submitted by federal officials who are entitled to advance decisions by GAO. *Optimum Systems, Inc.*, 54 Comp. Gen. 767, 773–75 (1975).

With respect to circumstance (4), a subcontract is considered to be "for" the government when it is made by a prime contractor who operates and manages a government-owned facility. *See, e.g., Lombard Corp. v. Resor*, 321 F.Supp. 687 (D.D.C.1970), a case on which Bayou State relies heavily for its contention that DUCI made the security services contract "for" the Department of Energy. GAO's dismissal of Bayou State's protest represents, therefore, a finding the DUCI was not acting "for" the government in selecting a subcontractor and

that Bayou State's quarrel with DUCI was a purely private one.

We normally would accord great weight to GAO's rejection of Bayou State's attempt to characterize DUCI as the government's alter ego. *See, e.g., Wheelabrator Corp. v. Chafee*, 455 F.2d 1306, 1313–17 (D.C.Cir.1971). As explained below, however, we may assume *arguendo* the correctness of Bayou State's position without altering the result in this case. Thus, we need not even review GAO's conclusions.

2. Bayou State argues that its claims are founded not on a contract, but on the *right* to a contract. The Court of Claims has held consistently, however, that lost profits calculated from a contract that never came into existence are not recoverable on any theory, and that disappointed bidders must confine their damages to proposal preparation costs. *See, e.g., Keco Industries, Inc. v. United States*, 428 F.2d 1233, 1240, 192 Ct.Cl. 773 (1970). Moreover, suits by disappointed bidders must inevitably find support in an "implied contract to fairly and honestly consider each plaintiffs' bid." *Id.* at 1236. Thus, jurisdiction over Bayou State's damage claims, whatever their merit, would have rested in the Court of Claims.

sound business judgment," the court entered a judgment dismissing the suit.

Bayou State[3] objects on appeal that the district court erred in not measuring DUCI's conduct against federal procurement regulations, in interpreting the complaint to state an action based on contract, and in refusing to find bad faith in the defendants' actions. It even asserts a due process claim arising from administrative and judicial rejection of its protest. Having reviewed the full record, we conclude that all of these contentions lack merit. Primarily, we agree with the district court that Bayou State has failed to substantiate, under any pertinent legal standard, its charge that DUCI acted improperly in selecting a subcontractor.

The parties have contended at length over whether DUCI was bound to follow as its standards federal procurement regulations in choosing a subcontractor. Bayou State insists that the regulations apply, that DUCI failed to follow them, and that the district court erroneously evaluated DUCI's conduct under the less demanding standards of private contract law. We are not certain which standards the district court applied.[4] We *are* certain, however, that it does not matter. Even under the stricter standards of governmental procurement, neither the terms of the Request for Proposals nor any of the federal regulations cited by appellant obligated DUCI to accept the lowest bidder.

▪ The keystone of Bayou State's argument is 41 C.F.R. § 1–3.805–1(c) (1981), which provides as follows:

> Except where the cost-reimbursement type contracts are to be used . . . a request for proposals may provide that after receipt of initial technical proposals, such proposals will be evaluated to determine those which are acceptable to the Government or which, after discussion, can be made acceptable, and upon sub-

mission of prices thereafter, award shall be made to that offeror of an acceptable proposal who is the low responsible offeror.

DUCI and the federal appellees maintain that use of the word "may" renders this provision entirely permissive. Indeed, we find this interpretation inescapable. The regulation in no way indicates that a bid request *must* provide for selection of the lowest bidder from among a pool of responsible offerors. Bayou State fixes upon the word "shall," which appears near the end of the paragraph. Only the most convoluted construction of the regulation, however, could support an impression that the mandatory "shall" is anything other than contingent upon the permissive "may" that precedes it. In other words, the government (or its agent) must accept the "low responsible offeror" only if it voluntarily has promised in its Request for Proposals to employ such a procedure.

Retreating to a second line of defense, Bayou State urges that DUCI included just such a promise in its Request, yet failed to comply with its own terms, or those of section 1–3.805–1(c), by accepting the lowest responsible offeror. Bayou State has not directed us to any such provision in DUCI's request, however, and our own inspection of that document satisfies us that the Request contained no terms similar to those permitted by § 1–3.805–1(c). Instead, DUCI's explanation to prospective bidders of its selection criteria merely raised the following possibility:

> If after evaluation of the Technical and Business Management Proposal and Cost Proposal, two or more competing overall proposals are within the competitive range, evaluated cost may be the decising [sic] factor for seclection [sic], depending on whether the most overall proposal (excluding cost considerations) is determined to be worth the cost differential, if any.

---

**3.** Bayou State's partner in the joint venture, Citadel Security, Inc., has not appealed.

**4.** The court below indicated only that "DUCI could choose any rational criteria for selection of a sub-contractor." As we explain below,

this standard is consonant with the terms of both DUCI's Request for Proposals and the federal regulations claimed by Bayou State to govern DUCI's conduct.

While perhaps not the clearest prose ever to grace the printed page, this paragraph adequately notified the competitors that the lowest bid might not prevail if a higher bidder offered additional competence worth the additional cost.

This was DUCI's prerogative, even under federal procurement regulations. As the regulations clearly recognize, selection of the most qualified contractors necessarily involves consideration of competitive features other than cost.

> While the lowest price or lowest cost to the Government is properly the deciding factor in source selection in many instances, award of a contract properly may be influenced by the proposal which promises the greatest value to the Government in terms of possible performance, ultimate producibility, growth potential, and other factors as may be the case, for example, when procuring research and development, *special or professional services,* (such as architect-engineer services) or when cost-reimbursement type contracting is anticipated (see § 103.805–2).

41 C.F.R. § 1–3.805–1 (introductory paragraph) (emphasis added). Judicial expression of this sensible theme antedates even the current regulations. "Contracting officers of the Federal Government have the duty to select the contract most advantageous to the Government, and advantage is not measured exclusively in terms of price; it includes other factors such as judgment, skill, ability, capacity, and integrity." *Friend v. Lee,* 221 F.2d 96, 100 (D.C.Cir. 1955). *See also Scanwell Laboratories, Inc. v. Shaffer,* 424 F.2d 859, 869 (D.C.Cir.1970).

We previously have indicated our agreement with the District of Columbia Circuit's opinions holding that disappointed bidders should face a rigorous standard in seeking judicial intervention into the procurement process. "Only when the court concludes that there has been a clear violation of duty by the procurement officials should it intervene in the procurement process and proceed to a determination of the controversy on the merits." *Kinnett Dairies, Inc. v.*

*Farrow,* 580 F.2d 1260, 1271 (5th Cir. 1978) (quoting *M. Steinthal & Co. v. Seamans,* 455 F.2d 1289, 1303 (D.C.Cir.1971) and citing *Scanwell, supra,* 424 F.2d at 874). Consequently, we stated in *Kinnett* that those challenging the legality of procurement decisions

> bear a heavy burden of showing either that (1) the procurement official's decisions on matters committed primarily to his own discretion had no rational basis, or (2) the procurement procedure involved a clear and prejudicial violation of applicable statutes or regulations.

580 F.2d at 1271 quoting *Kentron Hawaii Ltd. v. Warner,* 480 F.2d 1166, 1169 (D.C. Cir.1973).

■ Bayou State has met neither requirement. Apart from its improbable interpretation of 41 C.F.R. § 1–3.805–1(c), it tenders only some testimony suggesting that DUCI was less than thorough in checking a reference submitted by the proposed coordinator of Bayou-Citadel's training program. It is true that a pre-selection memo drawn up by DUCI's security director showed concern that his investigator had not been able to verify a reference given by Bayou State's training coordinator. The reference, a former director of the New Orleans Police Academy, testified before the district court that he did not recall having been contacted by DUCI and that he could have verified the coordinator's past affiliation with the academy.

However, this hardly carries Bayou State's formidable burden of showing that the overall selection of Wackenhut lacked a rational basis. The DUCI memo conveys a general disquiet over the qualifications of Bayou State's training coordinator, whose experience, according to DUCI, was chiefly in the fields of grant preparation, public relations, rehabilitation counseling, and corrections rather than law enforcement or guard training. "Training capability" was, after all, the element of highest priority in the Technical/Management scoring. Moreover, the memo also recorded DUCI's "reasonable doubt" as to Bayou State's "overall ability" to manage situations requiring reliance on "corporate experience/resources."

■ In sum, this court does not sit to ensure that the government or its contractors exercise perfect judgment in every procurement decision. "In the field of government procurement the courts must be sedulous to heed the admonition that their authority to vacate and enjoin action that is illegal must be exercised with restraint less (sic) the courts fall into the error of supposing that they may revise 'action simply because [they] happen to think it ill-considered, or to represent the less appealing alternative solution available.'" *Steinthal, supra,* 455 F.2d at 1298–99 quoting *Calcutta East Coast of India and East Pakistan/USA Conference v. Federal Maritime Commission,* 399 F.2d 994, 997 (D.C. Cir.1968). The competition between these bidders was sharp, the stakes high. Bayou State found itself edged out in the final round because DUCI believed that Wackenhut possessed greater experience worth the additional expense. DUCI's decision, based upon explicit and well-advertised criteria, was a rational one. As the court below observed, Bayou State's disappointment is understandable. It does not, however, justify relief from any of the federal appellees or DUCI. The judgment below is

AFFIRMED.