### FLIGHT INTERNATIONAL GROUP, INC., Plaintiff,

v.

### FEDERAL RESERVE BANK OF CHICAGO, Defendant.

#### Civ. A. No. C83–2696A.

United States District Court, N.D. Georgia, Atlanta Division.

Feb. 24, 1984.

John L. Taylor, Jr., John L. Schaub, Atlanta, Ga., for plaintiff.

Oliver I. Ireland, Chicago, Ill., Rebecca Zimmerman, Atlanta, Ga., for defendant Federal Reserve Bank of Chicago.

Samuel Bailey, Jr., Hartford, Conn., for intervenor-defendant Corporate Air, Inc.

Edgar A. Neely, III, Atlanta, Ga., for intervenor-defendant Bankair, Inc.

### ORDER

SHOOB, District Judge.

This is an action challenging the award of two contracts by the Federal Reserve Bank of Chicago for air transportation of bank checks as part of the nationwide check clearing function of the Federal Reserve System. Presently before the Court are a motion by defendant Federal Reserve Bank of Chicago to dismiss for lack of personal jurisdiction and a motion by plaintiff for a preliminary injunction.

Plaintiff, Flight International Group, Inc., is a Georgia-based company that engages in a variety of air transport services. In July 1983, the Federal Reserve Bank of Chicago, acting as agent of the several banks of the Federal Reserve System, invited bids for contracts for the overnight transport of checks among the Federal Reserve districts in six zones covering the United States. Flight International submitted the lowest cost bids for contracts for two of the zones, but those bids were rejected as nonresponsive. Defendant Federal Reserve Bank of Chicago awarded the connector zone contract to Corporate Air, Inc., and the yellow zone contract to Bankair, Inc. Those companies have intervened as defendants in the case. The Court has jurisdiction over this action pursuant to 12 U.S.C. § 632.

Flight International seeks judicial review of the award of the two contracts because of alleged arbitrary, capricious, and unlawful conduct of the Federal Reserve Bank of Chicago in awarding them. In particular, Flight International claims that the Federal Reserve Bank of Chicago used inappropriate criteria for evaluating the responsiveness of the bids, and improperly rejected the bids of Flight International as non-conforming to the bid specifications.

The heart of the dispute concerns the calculation of flight times and takeoff weights required of various models of aircraft for various flight plans. In its invitation for bids, the Federal Reserve Bank of Chicago had specified performance standards for aircraft proposed by the bidders. According to the Bank's calculations, Flight International did not meet those standards on the two separate contracts. The rejection of Flight International's bids on the two zones resulted in the award of contracts to bidders whose prices were significantly higher than Flight International's.[1]

## I. MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

■ At the outset, the Court must consider the Federal Reserve Bank's motion to dismiss for lack of personal jurisdiction.[2] The Federal Reserve Bank of Chicago shows that its Federal Reserve territory does not include Georgia and argues that its contacts in Georgia are insufficient to satisfy the Georgia long-arm statute, O.C.G.A. § 9–10–91, or the minimum contacts requirement of due process. Flight Inter-

---

1. For the connector zone, Flight International bid was $4,495,651 per year compared to Corporate Air's bid of $8,998,033; for the yellow zone, Flight International's bid was $684,669 compared to Bankair's bid of $1,151,098. The contracts were for three years.

2. There is no question as to jurisdiction over defendants Bankair, Inc. and Corporate Air, Inc.; they were added as defendants upon their own motions.

national responds by stating that the Bank's sending of an invitation for bids into the State of Georgia, the presence of an agent of the Bank in Atlanta to inspect and certify the plaintiff's facilities, and the use of Atlanta by the Bank as a hub for its check transportation system all establish sufficient contact in Georgia for this Court to exercise personal jurisdiction over the Bank.

The Court finds that the Bank's contacts in Georgia, as outlined by Flight International, were sufficient to establish minimum contacts required under the Constitution and the Georgia long-arm statute, O.C.G.A. § 9–10–91 (Michie Supp.1983), and that the Court therefore has jurisdiction over the Bank.

## II. MOTION FOR PRELIMINARY INJUNCTION

In considering a motion for preliminary injunction, the Court must consider the following factors:

1. whether there is a substantial likelihood that the movant will ultimately prevail on the merits of the claim,

2. whether the movant will suffer irreparable injury unless the injunction issues,

3. whether the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party, and

4. what the public interest is in the outcome.

*Cate v. Oldham*, 707 F.2d 1176, 1185 (11th Cir.1983). The Court will address those four considerations in turn.[3]

**3.** Plaintiff, citing *Collins & Company, General Contractors, Inc. v. Claytor*, 476 F.Supp. 407, 408–9 (N.D.Ga.1979), has suggested that the Court weigh the criteria for preliminary injunctive relief on a sliding scale, with a strong showing of one or more criteria compensating for a deficiency of another criterion. The Court does not accept the suggestion. The most recent Eleventh Circuit statements have listed the four criteria as separate elements that must be established by the movant. *See Cate v. Oldham*, 707 F.2d 1176, 1185 (11th Cir.1983); *Shatel Corp. v. Mao Ta Lumber and Yacht Corp.*, 697 F.2d 1352, 1354–5 (11th Cir.1983). The Court sees no rea-

### A. *Merits of Plaintiff's Claim*

A court is authorized by 5 U.S.C. § 702 to review "agency action." Before the Court can proceed to the substance of the complaint, therefore, it must first determine that the challenged practices are of an "agency" within the meaning of the Administrative Procedure Act. The Court must further determine whether the plaintiff has standing to seek review, in other words, whether the plaintiff is "suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute." 5 U.S.C. § 702.

When the Court reviews challenged practices, it may set them aside if they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). The Court will therefore consider in turn the availability of review under the A.P.A., plaintiff's standing, and the character of the challenged action.

### 1. Applicability of The A.P.A.

■ In order to apply the Administrative Procedure Act to the Bank, the Court must find that the Bank is an "agency" within the meaning of the Act.

The Act states:

"agency" means each authority of the Government of the United States, whether or not it is within or subject to review by another agency, but does not include—

(A) the Congress;

(B) the courts of the United States;

son to adopt a different approach. There are already relative evaluations built into two of the criteria: the third criterion requires the Court to compare the likely harms to the movant or opponents from the grant or denial of an injunction, and the fourth criterion, the consideration of the public interest, often requires a comparison of competing interests of the public. There is no need to establish a supervening relative evaluation in determining a motion for a preliminary injunction. The Court must be satisfied that the movant has carried its burden on *each* criterion.

(C) the governments of the territories or possessions of the United States;

(D) the government of the District of Columbia; ...

(E) agencies composed of representatives of the parties or of representatives of organizations of the parties to the disputes determined by them;

(F) courts martial and military commissions;

(G) military authority exercised in the field in time of war or in occupied territory; or

(H) functions conferred by sections 1738, 1739, 1743, and 1744 of title 12; chapter 2 of title 41; or sections 1622, 1844, 1891–1902, and former section 1641(b)(2), of title 50, appendix.

5 U.S.C. § 551(1). If the Federal Reserve Bank of Chicago is an "authority" of the government of the United States, and if it is not specifically excluded by section 551, then the actions of the Federal Reserve Bank of Chicago are reviewable as actions of an agency under the Administrative Procedure Act.

There can be no doubt that the Federal Reserve Bank of Chicago is an "authority" of the government of the United States. As a member bank of the Federal Reserve System, it performs important governmental functions and exercises powers entrusted to it by the United States government. *See United States v. Hollingshead,* 672 F.2d 751, 753–754 (9th Cir.1982) (Federal Reserve Bank a fiscal arm of government under general supervision of, and with duties delegated by, Board of Governors of Federal Reserve System); *Federal Reserve Bank of St. Louis v. Metrocentre Improvement District No. 1,* 657 F.2d 183, 185–186 (8th Cir.1981) *aff'd without opinion,* 455 U.S. 995, 102 S.Ct. 1625, 71 L.Ed.2d 857 (1982) (Federal Reserve Bank a governmental instrumentality performing important governmental function); *Federal Reserve Bank of St. Louis v. City of Memphis,* 649 F.2d 462 (6th Cir.1981), *aff'g by adopting district court order* 515 F.Supp. 63, 63–4 (W.D.Tenn.1979) (bank a federal instrumentality); *Federal Reserve Bank of*

*Boston v. Commissioner of Corporations and Taxation,* 499 F.2d 60, 62–63 (1st Cir. 1974) (banks plainly and predominantly fiscal arms of government, with interests indistinguishable from those of the sovereign), *later appeal after remand* 520 F.2d 221, 223 (1st Cir.1975) (bank a federal instrumentality); *Sundorph Aeronautical Corp. v. Federal Reserve Bank of Chicago,* No. C83–4723, slip op. (N.D.Ohio Jan. 6, 1984), *withdrawn after settlement,* slip op. (Feb. 3, 1984) (bank an executive agency subject to federal procurement laws); *Lee Construction Co. v. Federal Reserve Bank of Richmond,* 558 F.Supp. 165, 172–179 (D.Md.1982) (bank a federal agency within the Administrative Procedure Act); *Committee to Save the Fox Building v. Birmingham Branch of the Federal Reserve Bank of Atlanta,* 497 F.Supp. 504, 509–510 (N.D.Ala.1980) (regional banks are operating agencies of federal government under direction of Federal Reserve Board; bank is a federal agency under the National Environmental Policy Act and the National Historic Preservation Act); *Brinks, Inc. v. Board of Governors of the Federal Reserve System,* 466 F.Supp. 116, 118–120 (D.D.C.1979) (bank a part of United States for purposes of Service Contract Act, as argued by intervenor United States); *Dorsey v. Federal Reserve Bank of St. Louis,* 451 F.Supp. 683 (E.D.Mo.1978) (bank an executive agency under Title VII of Civil Rights Act of 1964, as argued by bank); *United States v. Ginsburg,* 376 F.Supp. 714, 718 (D.Conn.1974) (transfer of information on taxpayer from bank to Treasury Department to Internal Revenue Service described as "exchange of information among executive agencies").

Because the Bank is an authority of the United States government and is not listed among the exclusions of section 551, the Court determines that the Bank is an agency subject to review of its action under the Administrative Procedure Act. How the Bank can contend otherwise in good faith escapes the Court.

Furthermore, the Federal Reserve Board, unquestionably an agency of the

United States government, "may at its discretion exercise the functions of a clearing house for ... Federal reserve banks, or may designate a Federal reserve bank to exercise such functions, and may also require each such bank to exercise the functions of a clearing house for depository institutions." 12 U.S.C. § 248(*o*) (Supp. V 1981). One court has held that the action of the Board of Governors in operating and regulating its national check clearing service is subject to review under the Administrative Procedure Act. *See Independent Bankers Association of America v. Board of Governors of the Federal Reserve System*, 500 F.2d 812, 814 (D.C.Cir.1974). It is unquestionable that a court may review the action of either the Federal Reserve Board or its designated banks in connection with the national check transportation system.

### 2. Plaintiff's Standing

■ Having determined that the Federal Reserve Bank of Chicago is an agency subject to the Administrative Procedure Act, the Court examines whether this plaintiff can obtain judicial review of the Bank's action in awarding the contracts and rejecting the bids of the plaintiff. 5 U.S.C. § 702 provides a right of judicial review to "a person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute."

The old Fifth Circuit, in *Hayes International Corp. v. McLucas*, 509 F.2d 247, 255 (5th Cir.1975), stated the two tests for standing of an unsuccessful bidder as (1) whether "the plaintiff alleges that the challenged action has caused him injury in fact, economic or otherwise" and (2) whether "the interest sought to be protected by the complainant is arguably within a zone of interests to be protected or regulated by the statute or constitutional guarantee in question" (quoting *Allen Campbell Co. General Contractors, Inc. v. Lloyd Wood Construction Co.*, 446 F.2d 261, 264 n. 5

(5th Cir.1971)). *See also Association of Data Processing Service Organizations, Inc. v. Camp*, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970) ("zone of interests" test).

As to the first test, the Court finds that plaintiff has suffered injury in fact. Plaintiff has failed to obtain contracts to which it claims it was entitled, and has allegedly suffered harm from "the government's breach of its implied contract to deal fairly with all bidders," *CACI, Inc.-Federal v. United States*, 719 F.2d 1567, 1575 (Fed. Cir.1983). In addition plaintiff has lost substantial amounts of money and expended an enormous amount of time in preparing the bids that it contends were improperly rejected by the Federal Reserve Bank of Chicago.

The second test is more difficult. Plaintiff claims to be aggrieved by violation of federal procurement statutes and regulations promulgated under them, 41 U.S.C. § 251 *et seq.* and 41 C.F.R. Chapter 1. The Bank responds by claiming that the federal procurement statutes and regulations promulgated under them do not apply to a Federal Reserve Bank because it is not an "executive agency."

41 U.S.C. § 252(a) states: "Executive agencies shall make purchases and contracts for property and services in accordance with the provisions of this title and implementing regulations of the administrator"; if the Bank is not an executive agency, therefore, the statute has no application. The meaning of "executive agency" in that statute is governed by 40 U.S.C. § 472(a): "The term 'executive agency' means any executive department or independent establishment in the executive branch of the Government, including any wholly owned Government corporation." Although the Federal Reserve banks are not executive departments, *see* 5 U.S.C. § 101, they are independent establishments in the executive branch of the government.[4]

---

**4.** 40 U.S.C. § 472 does not refer to an explicit definition of "independent establishment." So far as the Court knows, that term is defined by

statute only once, in 5 U.S.C. § 104. That section states:

First, the official handbook of the federal government lists the Federal Reserve System, including the Federal Reserve banks, among the "Independent Establishments and Government Corporations" in the executive branch. Office of the Federal Register, National Archives and Records Service, General Services Administration, *The United States Government Manual 1983/84* v-vi; 514–521; *see also* 2 Fed.Proc., L.Ed. § 2:273 (1981).

Second, the President appoints the members of the Board of Governors of the Federal Reserve System with the advice and consent of the Senate. 12 U.S.C. § 241. The Board of Governors in turn appoints the chairman and two other members of the Board of Directors of each reserve bank. 12 U.S.C. § 302.

Third, the chairman and members of the Board of Governors are paid according to the federal executive pay levels established in 5 U.S.C. §§ 5313–5314.[5]

Fourth, the Federal Reserve Bank of St. Louis has contended, in a suit against it for employment discrimination under 42 U.S.C. § 2000e–16, that the bank was an executive agency. Because the plaintiff in that case had not satisfied administrative requirements for instituting a Title VII suit against an executive agency, the suit failed for want of jurisdiction. *Dorsey v. Federal Reserve Bank of St. Louis,* 451 F.Supp. 683 (E.D.Mo.1978). Although the court there agreed with the St. Louis Bank's argument, the Federal Reserve Bank of Chicago argues that the St. Louis Bank made a mistake in claiming executive agency status in that case. The Chicago Bank wishes to disclaim the St. Louis Bank's argument and to avoid the *Dorsey* court's ruling. This Court concurs with the ruling of the court in *Dorsey.*

Fifth, and finally, it is of no small significance that in this very case the Federal Reserve Bank of Chicago has sought to prevent discovery by plaintiff on the grounds of executive privilege.

Because the Bank is an executive agency, therefore, it is subject to the laws governing federal procurement; and there is no doubt that Flight International is within the zone of interests to be protected by the Administrative Procedure Act and the procurement statutes and regulations. They serve to protect the interests not only of the taxpayers who must pay for government procurement, but also of persons and companies who deal with government, in order to encourage their continued efforts to obtain government contracts. By fostering respect for the government procurement process and for government dealings with contractors in general, the statutes

---

For the purpose of [title 5, United States Code], "independent establishment" means—
(1) an establishment in the executive branch (other than the United States Postal Service or the Postal Rate Commission) which is not an Executive department, military department, Government corporation, or part thereof, or part of an independent establishment; and (2) the General Accounting Office.

If the Federal Reserve System as a whole is an independent establishment, the various banks of the system, being parts of it, would not themselves be independent establishments under this section. But this section is limited by its own terms to title 5, and need not govern determination of independent establishment status in 40 U.S.C. § 472. When the procurement statutes intended to rely upon this statutory definition of "independent establishment," they expressly referred to it. *See* 41 U.S.C. § 403 (Office of Federal Procurement Policy Act).

Furthermore, even if the Bank were not itself an independent establishment or an executive agency, that would not change the Court's appraisal of the merits of this case. Because the Federal Reserve System is unquestionably an independent establishment and therefore an executive agency, it is subject to the federal procurement laws. Having been designated the agent of the Federal Reserve System for organizing the interdistrict transportation system, the Bank must conform to the obligations of the System in the procurement process.

**5.** The offices enumerated in the federal executive pay levels are executive *branch* offices, not merely executive *level* posts. The Government Employees Salary Reform Act of 1964, Pub. L.No. 88–426, 78 Stat. 400 (1964) contained separate titles for federal legislative salaries (title II), federal executive salaries (title III), and federal judicial salaries (title IV). 5 U.S.C. §§ 5313–5314 were enacted as part of title III, as sections 303(b)(10) and 303(c)(45) of the 1964 Act. *See* 78 Stat. 400, 416, 417; 1964 U.S.Code Cong. & Ad.News 459, 479, 481.

and regulations insure steady interest by potential bidders. They attract more bids for government contracts, and give the government the greatest possible choice. This creates more competition and, ultimately, lower prices and better products or services. The Court therefore concludes that plaintiff has standing to seek judicial review.

### 3. Character of The Bank's Action

Having determined that the Federal Reserve Bank of Chicago comes within federal procurement laws, that its actions are reviewable under the Administrative Procedure Act, and that plaintiff has standing to obtain judicial review under the Administrative Procedure Act, the Court now examines the Bank's procedure in evaluating the bids and awarding the contracts in this case.

The standard and scope of review of administrative action are governed by 5 U.S.C. § 706. In order to set aside agency action, the Court must find that action to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."

A court must be very wary of interfering unduly with the procurement activities of government. The Court is not equipped or authorized to make fine appraisals of the advisability or merit of particular procurement practices. *Kinnett Dairies, Inc. v. Farrow*, 580 F.2d 1260, 1270–72 (5th Cir.1978). As one court has stated:

> In the field of government procurement the courts must be sedulous to heed the admonition that their authority to vacate and enjoin action that is illegal must be exercised with restraint lest the courts fall into the error of supposing that they may revise "action simply because [they] happen to think it ill considered, or to represent the less appealing alternative solution available."

*M. Steinthal & Co. v. Seamans*, 455 F.2d 1289, 1298–1299 (D.C.Cir.1971) (quoting *Calcutta East Coast of India and East Pakistan/USA Conference v. Federal Maritime Commission*, 399 F.2d 994, 997 (D.C.Cir.1968)). *See also Bayou State Security Services, Inc. v. Dravo Utility Constructors, Inc.*, 674 F.2d 325 (5th Cir.1982). On the other hand, there must be some external control on the action of agencies to insure that the government adheres to standards of behavior that preserve the trust of the taxpayers and maintain the respect and expectation of fairness of those who deal with the government.

On the evidence presented at the hearing, the Court finds that the Federal Reserve Bank of Chicago did not conduct a fair or informed evaluation of Flight International's bid.[6] The Court notes in particular that no expertise, no technical knowledge of any sort on the part of anyone employed by the Federal Reserve Bank of Chicago, contributed to the criteria for the interdistrict transportation system bid evaluations.

The Court finds that the Federal Reserve Bank of Chicago wrongly placed reliance on data that did not provide a fair basis of comparison among bidders. In particular, the assumption that aircraft specifications and capabilities could be determined by reference to a trade magazine that offered only general information, or to a computer model for aircraft performance that did not take into account any variation among types or modifications of particular aircraft models, robbed the evaluation process and the contract awards of any rational basis. Although the Court has heard no evidence that the bid process was infected with any impropriety, it is clear that the evaluation and awards were carried out without the requisite knowledge and understanding for an intelligent and rational evaluation. For those reasons, the action of the Federal Reserve Bank of Chicago appears both arbitrary and capricious.

---

**6.** The Court does not here indicate that its ruling on the action for a permanent injunction will necessarily agree with the preliminary findings here. These findings are merely preliminary and, though relevant to the ultimate resolution of the case, are not conclusive.

In addition, the action of the Federal Reserve Bank of Chicago appears to have violated several procurement regulations, including 41 C.F.R. §§ 1–1.301–1 (requiring that all purchases and contracts be made on a competitive basis to the maximum practicable extent); 1–2.407–1(a) (requiring that the contract be awarded to that responsible bidder whose bid, conforming to the invitation for bids, will be most advantageous to the government, price and other factors considered); and 1–2.407–2 (requiring that the price under a contract be reasonable). The Court therefore concludes that the plaintiff has shown a substantial likelihood of success on the merits in this action.

### B. *Irreparableness of Harm to Plaintiff*

The second consideration of the Court in determining whether a preliminary injunction is appropriate is whether the plaintiff will suffer irreparable harm if the injunction does not issue. It is clear that the plaintiff has already suffered irreparable harm by not being awarded the contract. The plaintiff may not recoup profits lost as a result of being denied the contract, but may seek as damages only the expenses incurred in preparing the bid. *Keco Industries, Inc. v. United States*, 428 F.2d 1233, 1240, 192 Ct.Cl. 773 (1970); *Heyer Products Co. v. United States*, 140 F.Supp. 409, 412, 135 Ct.Cl. 63 (1956).

■ In determining a motion for preliminary injunction, however, a court does not consider merely whether the plaintiff has already suffered irreparable harm. Instead, the question is whether the plaintiff *will* suffer irreparable harm *if the preliminary injunction is not granted.* A preliminary injunction is appropriate only if it will prevent future irreparable harm.

It is clear to the Court that the plaintiff will gain no protection from a preliminary injunction. A preliminary injunction would not accomplish the goals of the plaintiff in seeking a permanent injunction; nor would it speed the entry of a permanent injunction. Here, a preliminary injunction would force the Federal Reserve Bank to make *ad hoc* arrangements continuing the operation of the interdistrict transportation system as they stood before the new contracts were awarded. Because the arrangements in place before the new contract took effect did not include any services by plaintiff, plaintiff would derive no benefit from interim relief that restores the earlier arrangements. A preliminary injunction would only penalize defendants. The purpose of a preliminary injunction, however, is to prevent harm, not to inflict a penalty.

In conclusion, therefore, the Court must find that plaintiff will not suffer irreparable harm by not obtaining a *preliminary* injunction. However, plaintiff's interests will be served by a prompt trial of its action for a permanent injunction, and the Court will order an expedited trial.

### C. *Harms to Other Parties*

■ The Court must determine whether the threat of harm to other parties if an injunction issues is greater than the threatened harm to the movant if the Court does not grant an injunction. The three parties whose interests must be examined are the Federal Reserve Bank of Chicago, Bankair, and Corporate Air.[7]

If the Court entered a preliminary injunction, the effect would be to interrupt the operation of, but not to cancel, the new contracts pending the resolution of this dispute. The old arrangements preceding these new contracts would have to be revived, and, if at the end of the litigation the plaintiff loses, the new contracts would be reinstated after an interval when their operation had been preliminarily enjoined.

Several harmful consequences would flow from an interruption of the new contracts. First, it might disrupt the schedule of the check transfer system, with a consequent rise in the cost of "float," the time value of checks in transit between banks. Second, it would disrupt the business of the

---

7. Plaintiff originally pointed out that the two successful bidders on the contracts need not be taken into account because they were not parties; however, since the bidders have become defendants on their own motion, their interests must be considered.

two successful bidders. This disruption would be more severe if there were merely a gap in the operation of the contract than if the contract were absolutely terminated, because employees and equipment would have to be maintained currently ready to resume service instead of being dispatched to different jobs. Third, a gap in the new contract might cause considerable added costs to the Federal Reserve Bank of Chicago. If the Bank only suspends the operation of the new contracts, without cancelling them, it might have to pay the price specified in each contract as if the contract were actually being performed. In addition, however, the Bank would have to pay the actual costs incurred for the *ad hoc* services to be put in place during the suspension of the new contracts. While the Bank has escape clauses in its contracts to allow it to discharge the new contracts upon payment of specified sums, those clauses might apply only where there is an actual termination, instead of a gap in operation.

The Court concludes that the potential harm to defendants from a preliminary injunction might indeed be substantial and would definitely outweigh any harm to plaintiff from the denial of a preliminary injunction.

D. *Public Interest*

Plaintiff has pointed out that the public has a strong interest in low cost procurement of services by the government and in integrity of the bidding process. On the other hand, as pointed out by defendants, the public also has a strong interest in the efficiency of the check transportation network. The Court's focus, again, must be upon the public's interest in the issuance of a *preliminary* injunction, not necessarily the interest of the public in the final result. The public's interest in the low cost of government procurement and the integrity of the bidding process will be vindicated by the final result in this case after a trial upon the merits, but the public has little to gain from the entry of an interim injunction except for punishment of parties who have entered into allegedly improperly awarded contracts. As a result, the pub-

lic's interest in efficiency of the check transportation system is paramount and calls for denial of preliminary injunctive relief.

III. CONCLUSION

The Court DENIES the motion of defendant Federal Reserve Bank of Chicago to dismiss for lack of personal jurisdiction.

Although the Court finds that plaintiff has a substantial likelihood of success on the merits of its claim, the Court finds that plaintiff will not suffer irreparable injury if a preliminary injunction does not issue; defendants would be harmed substantially by the entry of a preliminary injunction if they ultimately prevail on the merits; and the public interest weighs heavily against the grant of a preliminary injunction. Therefore, the Court DENIES the motion of plaintiff for a preliminary injunction.

The Court does feel, however, that an expedited trial of the merits of this case is appropriate. Accordingly, the Court DIRECTS the Clerk to set this case for trial on Monday, April 2, 1984, at 9:30 a.m.

IT IS SO ORDERED, this 24th day of February, 1984.